628 S.E.2d 894

**Ellis ARTHUR and Barbara Arthur as Wife, next friend, and companion, Appellants,**

**v.**

**SEXTON DENTAL CLINIC, and Leigh Westraad and Lisa Ann Eagerton, as personal representatives of the Estate of Dr. H.L. Eagerton, Jr. and his associates A–Z; SC JUA, Respondents.**

No. 4103.

Court of Appeals of South Carolina.

Heard Sept. 13, 2005.

Decided April 10, 2006.

---

6. 347 S.C. at 70, 552 S.E.2d at 340.

328

Ellis and Barbara Arthur, of Myrtle Beach, pro se, for Appellants.[1]

Saunders M. Bridges, Jr. and Amy Anderson Wise, of Florence, for Respondents.

---

1. Although Appellants were represented by counsel at trial and through oral argument before this court, we note they are now proceeding *pro se* in this appeal.

BEATTY, J.:

In this medical malpractice action, Ellis Arthur and Barbara Arthur (Appellants) appeal the circuit court's order, arguing the court erred in: (1) failing to set aside a scheduling order; (2) limiting discovery; (3) denying their *Batson* motion; and (4) excluding certain witnesses at trial. We affirm.

## FACTS

On May 8 1995, Ellis Arthur visited the Sexton Dental Clinic with a toothache. Dr. Sojourner examined Arthur and extracted Arthur's tooth. Arthur returned to the Sexton Dental Clinic on May 10, 1995, because he continued to experience pain. Dr. Hester examined Arthur, did not see any problems, and sent Arthur home. Arthur began to experience trismus,[2] and therefore returned to the Sexton Dental Clinic once again on May 12, 1995. Dr. Sojourner examined Arthur, discovered an infection, and prescribed antibiotics. Arthur was hospitalized on May 16 for the infection and remained hospitalized for approximately two weeks. Arthur continues to suffer from pain in his throat and jaw. In addition, he has trouble swallowing food, and cannot speak clearly.

On April 30, 1998, Arthur and his wife filed this action against the Sexton Dental Clinic, Dr. Eagerton,[3] and some associates (Respondents) for medical malpractice. Shortly after answering the Appellants' complaint, Respondents' counsel served Appellants with interrogatories and requests for the production of documents. When responses were not completed in a timely manner, Respondents moved to compel Appellants to answer the discovery. After a hearing, Circuit Court Judge Sidney Floyd granted the motion and ordered Appellants to respond within sixty days and to specifically address information regarding their expert witnesses.

---

2. Trismus is a spasm of the jaw muscles that makes it difficult to open the mouth.

3. The complaint alleged Dr. Eagerton extracted Arthur's tooth. At trial, however, Arthur testified Dr. Sojourner extracted his tooth. Respondents denied Dr. Eagerton ever treated Arthur. Dr. Eagerton is now deceased. He passed away after the trial.

On July 26, 2000, Respondents retained new counsel. The new counsel soon became concerned regarding the limited amount of discovery that had been completed in the two years since the case was filed. As a result, counsel forwarded a proposed scheduling order to Circuit Court Judge James E. Brogdon, Jr., the Chief Administrative Judge, on November 9, 2000. Counsel also forwarded a copy of the proposed scheduling order to Appellants' counsel. A few days later, Judge Brogdon's law clerk called Appellants' counsel to discuss the proposed scheduling order and left a voicemail message concerning the order. In addition, Respondents' counsel mailed Appellants' counsel a letter inquiring whether Appellants would agree to the proposed scheduling order and stating that if Appellants did not consent, Judge Brogdon would schedule a conference to discuss the matter. After receiving no response from Appellants' counsel, Judge Brogdon signed the scheduling order on December 19, 2000. The order, which was filed on January 4, 2001, limited discovery to forty-five days.

On September 19, 2001, Circuit Court Judge J. Michael Baxley held a hearing concerning the parties' pending motions. The motions included the following: (1) Respondents' motion to compel discovery; (2) Respondents' motions for summary judgment; (3) Appellants' motion to set aside the scheduling order; (4) Appellants' motion to amend the pleadings to include additional doctors; and (5) Appellants' motion to compel the depositions of certain witnesses. At the beginning of the hearing, Judge Baxley notified the parties that he planned to defer Appellants' motion to set aside the scheduling order to Judge Brogdon. Judge Baxley stated "I am not the chief administrative judge" and "I'm going to defer to him and I'll let you go back in the back and have a telephone conference with Judge Brogdon." Appellants objected, arguing the "scheduling order is a matter that needs to be heard and ruled on by the Court because ... the other motions ... fall from that." Judge Baxley refused to hear the scheduling order motion. However, he heard Respondents' motions and Appellants' motion to amend the pleadings. He deferred Appellants' motion to compel depositions until Judge Brogdon ruled on the scheduling order motion.

Prior to the telephone conference with Judge Brogdon, Judge Baxley denied Respondents' motion for summary judgment. Judge Baxley, however, granted Respondents' motion

to compel discovery and ordered Appellants to produce dental records, prescription records, tax returns, and an itemized statement of damages within ten days. In addition, Judge Baxley denied Appellants' motion to amend the pleadings stating, "[i]t would be significantly prejudicial to these new parties and to the existing defendants to allow this amendment at this very late hour."

During the telephone conference, Judge Brogdon denied Appellants' motion to set aside the scheduling order. After the telephone conference, Judge Baxley resumed the proceeding and heard Appellants' motion to compel the deposition of certain witnesses. Because the witnesses were not properly identified prior to the end of discovery as provided in the scheduling order, Judge Baxley denied this motion. Appellants were, however, permitted to depose Dr. Eagerton.

On January 14, 2002, Judge Brogdon presided over the jury trial in the case. During jury selection, Appellants challenged two of Respondents' peremptory strikes based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Judge Brogdon held a *Batson* hearing and ruled the strikes were proper given there was no showing of pretext.

After the *Batson* hearing, Appellants' counsel renewed his motions. Judge Brogdon considered these motions as well as Respondents' pre-trial motions, which included: (1) Respondents' motion seeking to exclude certain evidence due to Appellants' failure to comply with discovery within the ten-day time frame set forth in Judge Baxley's order; and (2) Respondents' motion to exclude the testimony of Appellants' witnesses, Dr. Fish, Dr. Graham, and Dr. Chewning. Judge Brogdon granted Respondents' motion and, as a consequence, excluded evidence Appellants failed to timely produce. Specifically, Judge Brogdon excluded the testimony of Drs. Fish, Graham, and Chewning.

Ultimately, the jury rendered a verdict in favor of Respondents. Judge Brogdon denied Appellants' post-trial motions. This appeal followed.

## DISCUSSION

### I. Discovery

Appellants contend the circuit court erred in issuing the scheduling order outside the presence of Appellants' counsel.

In the alternative, Appellants assert the circuit court erred in failing to set aside the scheduling order and declining to extend the time for discovery.[4]  We disagree.

  "The trial court's rulings on discovery matters will not be disturbed on appeal absent a clear abuse of discretion." *Belk of Spartanburg, S.C., Inc. v. Thompson*, 337 S.C. 109, 126–27, 522 S.E.2d 357, 366 (Ct.App.1999).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

  Under certain conditions, the South Carolina Rules of Civil Procedure permit trial courts to issue scheduling orders for discovery.  Rule 16(a)(5) provides that upon motion of the parties, the court "may in its discretion or upon motion of any party direct the attorneys for the parties to appear before it" for a pre-trial hearing to consider the limitation of time allowed for discovery.  In addition, Rule 26(f) provides the following:

> [T]he court may direct the attorneys for the parties to appear before it for a conference on the subject of discovery.  The court shall do so upon motion by the attorneys for any party if the motion includes: (1) A statement of the issues as they then appear; (2) A proposed plan and schedule of discovery; (3) Any limitations proposed to be placed on discovery; (4) Any other proposed orders with respect to discovery; and (5) A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion.

Rule 26(f), SCRCP.  The court may combine a pre-trial hearing, authorized by Rule 16, and a discovery conference, authorized by Rule 26(f).  *Id.*

  In this case, Respondents' counsel forwarded a proposed scheduling order to Judge Brogdon on November 9, 2000, along with a brief letter explaining his concerns regard-

---

4.  Although Appellants raise three separate issues, we have consolidated the related issues under one heading in the interest of clarity and brevity.

ing the limited amount of discovery that had been completed.[5] After unsuccessfully attempting to contact Appellants' counsel, Judge Brogdon signed the scheduling order on December 19, 2000, and filed it on January 4, 2001. Although Judge Brogdon did not hold a discovery conference or a pre-trial hearing, we find no reversible error.

■ Initially, we reject Appellants' contention that Judge Brogdon was required to hold a hearing on the issuance of the scheduling order. Our review of the above-cited rules of civil procedure reveals that the decision of whether to conduct a hearing is a matter left to the discretion of the trial judge. This interpretation of the rules is supported by analysis of Rule 16 of the Federal Rules of Civil Procedure, a rule that is similar to our state court rule. Rule 16, SCRCP editor's note ("This Rule 16 is similar to the Federal Rule" with limited exceptions.). Specifically, secondary authority has stated that a scheduling conference is not mandatory and the issuance of a scheduling order does not require formal communication. *See* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. Supp. 2005) (analyzing Rule 16, FRCP, and stating, "A scheduling conference may be requested by the judge or the parties, but it is not mandatory. Indeed, Rule 16(b) specifically provides that if the request for a conference is not made within 120 days after the action is filed, the scheduling order will be issued without

---

5. We note that it is questionable whether Respondents' counsel's letter combined with the attached proposed scheduling order constituted a motion under Rule 7(b), SCRCP. Rule 7(b) provides that motions "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Although the letter and proposed order were not necessarily the equivalent of a formal motion, the letter was in writing and it expressed counsel's concerns regarding discovery. The attached proposed scheduling order also set forth the relief sought by Respondents. In addition, Respondents' counsel mailed a copy of the letter and the proposed order to Appellants' counsel. Because the circuit court and the parties were aware of the substance of Respondents' request, we do not believe Appellants were prejudiced by the absence of a formal motion. *Cf. DM Co. v. Nycoil Co.*, 273 S.C. 496, 499, 257 S.E.2d 499, 500 (1979) (holding judgment by default was precluded where oral response to pleadings, which did not comply with strictures of circuit court rules, at a rule to show cause hearing was sufficient to comply with substantive requirement of the rules given plaintiff had actual notice of both the existence and contents of defendant's response to plaintiff's Complaint).

a conference, although after some communication with the parties. That communication may be very informal. As explained in the Advisory Committee Note, the scheduling order may be issued after consultation with the parties by telephone or mail, rather than in person.").

Furthermore, within the context of this procedure, Appellants' counsel was given sufficient time to object to the proposed scheduling order and request a hearing before the order was issued. Nearly two months elapsed between the time the proposed order was submitted and when it was filed. Despite this time period, Appellants' counsel admitted at oral argument that he did not respond to the circuit court's inquiry regarding the order.

Based on the specific facts of this case, we find Judge Brogdon did not abuse his discretion in issuing the scheduling order without a hearing. Because we conclude Judge Brogdon properly issued the scheduling order, we also agree with his decision declining to set aside the order. Furthermore, we find Judge Baxley properly deferred this decision to Judge Brogdon. *See Enoree Baptist Church v. Fletcher,* 287 S.C. 602, 604, 340 S.E.2d 546, 547 (1986) ("One circuit court judge does not have the authority to set aside the order of another.").

■ In conjunction, we agree with Judge Baxley's decision declining to extend the time for discovery beyond that which was set in the scheduling order. Appellants brought this action against Respondents in April of 1998. The scheduling order, filed on January 4, 2001, gave the parties until February 19, 2001, an additional forty-five days to complete discovery. In view of this extensive time frame for discovery, we cannot discern nor can Appellants explain how they were prejudiced or that a "manifest injustice" was created by the judge's decision to limit the time for discovery given the case had been pending for nearly three years. Accordingly, we find Judge Baxley did not abuse his discretion regarding the rulings on discovery.

## II. *Batson* Motion

Appellants argue the circuit court erred in allowing Respondents to exercise preemptory strikes which excluded all Afri-

can–American males from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree.

The trial court must conduct a *Batson* hearing when members of a racial or gender group are struck and the opposing party requests a hearing. *State v. Haigler*, 334 S.C. 623, 629, 515 S.E.2d 88, 90 (1999). During the hearing, the proponent of the strikes must present racially neutral explanations. *Id.*; *State v. Adams*, 322 S.C. 114, 124, 470 S.E.2d 366, 372 (1996). "Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral." *Payton v. Kearse*, 329 S.C. 51, 55, 495 S.E.2d 205, 207 (1998). The burden then shifts to the party challenging the strikes to show the explanations were merely pretextual. *Haigler*, 334 S.C. at 629, 515 S.E.2d at 91; *Adams*, 322 S.C. at 124, 470 S.E.2d at 372. Our supreme court has explained:

> Pretext generally will be established by showing that similarly situated members of another race were seated on the jury. Under some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the judge may determine, at the third step of the analysis, that the explanation was mere pretext even without a showing of disparate treatment.

*Payton*, 329 S.C. at 55, 495 S.E.2d at 208.

The opponent of the strike carries the ultimate burden of persuading the trial court the challenged party exercised strikes in a discriminatory manner. *Adams*, 322 S.C. at 124, 470 S.E.2d at 372. Whether a *Batson* violation has occurred must be determined by examining the totality of the circumstances, and appellate courts review the trial court's ruling with a clearly erroneous standard. *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001).

In this case, Respondents struck three Caucasians and three African–Americans from the jury. Appellants challenged two of the strikes pursuant to *Batson*. The trial judge conducted a *Batson* hearing. During the hearing, Respondents offered race-neutral reasons for the strikes. Respondents struck one potential juror due to the residential area where he lived. Specifically, Respondents stated the potential juror appeared to live in the same general area as the

Appellants and also seemed to be close in age to the Appellants. In addition, Respondents noted the potential juror wore an "unusual piece of jewelry around his neck." Respondents struck the second potential juror because he was a minister. Respondents' counsel explained: "I look at pastors or preachers or reverends very carefully because ... [they] are inclined to award money maybe under the theory of the milk of human kindness." The trial judge found both strikes were proper and found no showing of pretext on either strike.

We agree with the trial judge that the reasons Respondents offered to explain the strikes were facially race-neutral. *See State v. Rayfield,* 357 S.C. 497, 502, 593 S.E.2d 486, 489 (Ct.App.2004), *cert. granted* (Mar. 3, 2005)(recognizing that "[o]ur courts, as well as other jurisdictions, have consistently found a prospective juror's demeanor and appearance as non-discriminatory reasons for exercising a peremptory challenge of the juror"); *see also State v. Ford,* 334 S.C. 59, 65, 512 S.E.2d 500, 504 (1999) (finding place or type of employment may be race-neutral reason for strike).

Thus, the burden shifted back to Appellants to prove pretext. Appellants did not show that similarly situated Caucasians were seated on the jury nor did Appellants offer any evidence showing Respondents' explanations were fundamentally implausible. Instead, Appellants simply disagreed with the legitimacy of Respondents' explanations. Thus, Appellants failed to meet their burden.[6]

## III. Exclusion of Witnesses

Appellants argue the trial judge erred in excluding their expert, Dr. Fish, and their witnesses, Dr. Chewning and Dr. Graham, from trial.[7] Appellants contend the court failed to

---

6. In their brief, Appellants note they raised a *Batson* challenge regarding the "abnormal excusing [of] a black male juror from the panel after all voir dire and other inquires into the jury selection process had been concluded." Appellants, however, failed to provide arguments or supporting authority for this assertion. Thus, the issue is deemed abandoned on appeal. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting where a party fails to cite authority or where the argument is simply a conclusory statement, the party is deemed to have abandoned the issue).

7. We reject Respondents' claim that Appellants failed to preserve this issue for review because Appellants did not proffer the testimony of the

consider the factors set forth in *Jumper v. Hawkins,* 348 S.C. 142, 558 S.E.2d 911 (Ct.App.2001), before excluding their witnesses. We disagree.

As a threshold matter, it is undisputed that Appellants failed to specifically name the above-listed witnesses in their answer to Respondents' interrogatories within the time limits established by the scheduling order. Given Appellants failure to strictly comply with the scheduling order, the trial judge had the discretionary authority to impose the appropriate sanction if any was warranted. Thus, the question becomes whether the judge abused his discretion in excluding Appellants' three witnesses. *See Laney v. Hefley,* 262 S.C. 54, 58, 202 S.E.2d 12, 14 (1974) (applying former Circuit Court Rule 90 governing interrogatories and finding that "what sanctions, if any, are to be imposed where there is a failure to fully comply with the rule" is left largely to the discretion of the trial judge); *Dunn v. Coca–Cola Bottling Co.,* 307 S.C. 426, 432, 415 S.E.2d 590, 593 (Ct.App.1992), *rev'd on other grounds,* 311 S.C. 43, 426 S.E.2d 756 (1993) (stating "[t]he decision of whether or not to allow a witness to testify who was not previously listed on answers to interrogatories rests within the sound discretion of the trial judge"); *see also Callen v. Callen,* 365 S.C. 618, 627, 620 S.E.2d 59, 64 (2005) (finding family court failed to exercise discretion in ruling on defendant's motion to exclude plaintiff's witness where court failed to make appropriate inquiry).

In *Jumper,* this court specifically addressed the authority of a trial judge to exclude the testimony of an expert witness. We held a trial judge is required to consider and evaluate the following factors prior to excluding a witness:

(1) the type of witness involved;

(2) the content of the evidence emanating from the proffered witness;

(3) the nature of the failure or neglect or refusal to furnish the witness' name;

---

witnesses at trial. After the trial judge granted Respondents' motion to exclude the witnesses, Appellants asked if they could note for the record that they intended to call the excluded witnesses. Judge Baxley replied, "Sure you may." Appellants then noted each witness Appellants would have called if the trial judge had allowed the witness' testimony.

(4) the degree of surprise to the other party, including the prior knowledge of the name of the witness; and

(5) the prejudice to the opposing party.

*Jumper*, 348 S.C. at 152, 558 S.E.2d at 916.

██ Although we recognize that the trial judge excluded the testimony of Dr. Fish, Dr. Chewning, and Dr. Graham without specifically enunciating the *Jumper* factors, we believe his failure to do so is not sufficient to constitute reversible error. Based on our review of the record, we find the judge considered the requisite factors and made the appropriate inquiry before ultimately excluding the challenged witnesses.

Initially, we note Respondents' counsel prefaced his argument concerning his motion in limine by directing the judge's attention to *Jumper*. Furthermore, in the course of the extensive discussion on this motion the judge either heard through arguments of counsel or elicited information sufficient to satisfy each *Jumper* factor.

In terms of Dr. Fish, the judge was aware that Appellants sought to call him as an expert witness. The judge was also apprised of Dr. Fish's testimony. Appellants' counsel explained that he intended to call Dr. Fish in response to the contradictory information the Respondents elicited in their deposition of Appellants' initial expert witness. Appellants' claimed the testimony of their first expert witness was inconsistent because the witness did not have access to all of Arthur's medical records. Additionally, as part of their return to Respondents' written motion in limine, Appellants submitted an affidavit in which Dr. Fish summarized his expert opinion.

As to the third and fourth *Jumper* factors, there is evidence that Appellants failed to or neglected to furnish Respondents with the name and information of Dr. Fish until after the discovery deadline. Appellants' filed their Complaint on April 30, 1998. They did not list Dr. Fish as an expert witness in their original or supplemental answers to Respondents' interrogatories. In a letter to Respondents dated February 16, 2001, Appellants first mentioned enlisting Dr. Fish as an expert witness. In a follow-up letter to Respondents dated March 2, 2001, Appellants identified Dr. Fish as another expert. This letter, however, was beyond the February 19,

2001 deadline set by the scheduling order. This delay is inexplicable given Appellants' counsel told the judge during the motion in limine hearing that "[t]his witness was set up ever since 1999 on this case."

This late notification inevitably created significant surprise to Respondents. In a letter dated March 7, 2001, Respondents notified Appellants that they took the position that Dr. Fish was not a named expert because he was not identified before the discovery deadline. After the case was set for date certain on January 14, 2002, Respondents' again informed Appellants by letter dated October 23, 2001, of their position regarding Dr. Fish and requested Appellants respond if they were in disagreement. Appellants offered no response until the case was called for trial.

Finally, given these circumstances, Respondents were prejudiced by the fact that they did not have time to depose Dr. Fish prior to trial given Appellants identified him as a definite witness after the discovery deadline and failed to provide any additional information regarding this out-of-state expert.

As to Dr. Graham and Dr. Chewning, we initially question whether Appellants preserved for our review any argument concerning the exclusion of these witnesses. A review of their brief reveals that Appellants only specifically referenced Dr. Fish by name. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting where a party fails to cite authority or where the argument is simply a conclusory statement, the party is deemed to have abandoned the issue). Because, however, the argument was made to the trial judge and the Appellants generally discuss these two witnesses, we have decided to address the issue on the merits.

Similar to the judge's decision to exclude Dr. Fish, we also find the judge properly excluded Dr. Graham and Dr. Chewning. With respect to the first and second *Jumper* factors, Appellants informed the judge that Dr. Graham and Dr. Chewning were treating physicians of Arthur and had access to his medical records. Appellants further explained that Dr. Chewning was a "subsequent caretaker" of Arthur and had "in essence saved that man's life." However, Appellants informed the judge that neither witness could testify to the events of

May 8, 1995, because they were not present when the tooth extraction took place.

In terms of Appellants' failure to furnish Respondents with the names of these witnesses, the record reflects that neither witness was specifically listed in response to Respondents' interrogatories. Instead, Appellants indicated in their response that they would "permit review of [the following] medical records regarding treatment and cost" from Carolina Hospital Systems, Graham Clinic, and Dr. Chewning.

Finally, there is evidence that Respondents were significantly surprised and prejudiced by Appellants' decision to call these two witnesses at trial given Respondents did not receive notice that these witnesses had been subpoenaed until the Friday before the trial that was scheduled for Monday. Due to the late notification, Respondents were unable to depose either witness before trial.

Accordingly, we find the trial judge did not abuse his discretion in excluding Appellants' three witnesses. In reaching this decision, the judge did not exclude the witnesses solely on the ground of Appellants' failure to comply with the time limits of the scheduling order. Instead, the judge made the appropriate inquiry and considered the requisite factors. *Cf. Barnette v. Adams Bros. Logging, Inc.*, 355 S.C. 588, 593, 586 S.E.2d 572, 575 (2003) (reversing decision of trial court to exclude plaintiffs' witnesses where "the trial court made no specific finding of prejudice to the respondents, other than finding the late disclosure would necessitate further discovery" and the "trial court advised the parties that there had been no disobedience of any order of the court, and that it had not imposed any sanctions"); *Jumper*, 348 S.C. at 151, 558 S.E.2d at 916 (reversing trial court's decision to exclude plaintiff's expert witness where the court failed to learn and analyze all of the details and information about the witness and the court relied solely on the limits established by the pre-trial discovery order).

## CONCLUSION

For the reasons stated herein, we find the circuit court did not err in its rulings regarding the issuance of the scheduling order as well as discovery. Moreover, we find the circuit

court did not abuse its discretion in excluding three of Appellants' witnesses at trial and did not err in denying Appellants' *Batson* motion.

**AFFIRMED.**

GOOLSBY and SHORT, JJ., concur.