662 S.E.2d 611

**Carl N. BRYSON, as Personal Representative of the Estate of Conrad Ardell Bryson and its heirs, Respondent,**

v.

**Herman Billy BRYSON, Appellant.**

**No. 4400.**

Court of Appeals of South Carolina.

Submitted May 1, 2008.

Decided June 5, 2008.

David R. Harrison, of Pickens, for Appellant.

William Douglas Richardson, of Easley, for Respondent.

WILLIAMS, J.

Carl N. Bryson (Carl), as personal representative (PR) of Conrad Ardell Bryson's (Ardell) estate, sued Herman Billy Bryson (Billy) for breach of fiduciary duty. The special referee awarded the estate $306,786.49 in damages and set aside a deed that Ardell transferred to Billy. We affirm.

## FACTS

On December 8, 1997, Ardell appointed Billy, his half-brother, as his power of attorney. From 2001 until Ardell's death, Billy spent time with Ardell and took him to the doctor. In 1997, Dr. Thomas E. Parrish (Dr. Parrish) diagnosed Ardell with severe dementia, and later in 1998, Dr. Parrish diagnosed Ardell with Alzheimer's disease. Billy testified he was unaware of the diagnoses. However, several witnesses testified Ar-

dell's symptoms and behavior stemming from Alzheimer's disease were apparent.

At trial, Dr. Parrish opined to a reasonable degree of medical certainty, Ardell was not capable of caring for himself. Furthermore, Dr. Parrish testified Ardell did not have the mental competency to make everyday decisions, transfer personal or real property, or handle his finances. Glenda Bryson Smith (Glenda) and Laura Jane Smith (Laura), Ardell's caretakers, testified Ardell displayed signs of his illness and acted in a childlike manner. Further, Glenda testified Billy hired her to care for Ardell and he knew about Ardell's condition.

After Billy's power of attorney appointment, he and Ardell opened a joint bank account, and several checks were written from that account. One check for $50,000 was written as a loan to an insurance company, which Billy testified was an investment in Hal Blackwell Insurance Company. Billy paid off his son's mortgage with another check from the joint account in the amount of $25,877. Billy also purchased a car, paid for home improvements, took out cash, and made several other purchases for his personal benefit with Ardell's funds while acting as Ardell's power of attorney. Additionally, Ardell deeded property to Billy without consideration on August 8, 2002.

Carl, as PR of Ardell's estate, filed a summons and complaint against Billy in Pickens County on August 18, 2004, alleging Billy breached his fiduciary duty as Ardell's power of attorney and committed fraud and conversion. Billy's answer sought dismissal of the action, but the case proceeded to trial in front of a special referee.[1]

At trial, Billy sought to have Ardell's neighbor, Brian Lloyd Smith (Smith), a witness whom Billy did not name in his answers to the interrogatories and whom Carl was not informed of until the morning of the trial, testify as to his observations of Ardell. The special referee allowed Billy to proffer Smith's testimony but ultimately excluded the evidence. Additionally, at the close of trial, Billy moved for an involuntary nonsuit, claiming Carl was not the real party in interest. The special referee denied this motion.

---

1. Both parties consented to have this matter referred to a special referee.

The special referee found Billy breached his fiduciary duty to Ardell and awarded the estate $306,786.49. Additionally, the special referee ordered the deed of real property, which Ardell transferred to Billy and executed on August 8, 2002, be set aside in its entirety except for the portion of the parcel Ardell transferred to Providence Christian Academy. The special referee ordered the property be included in Ardell's estate. This appeal follows.

## STANDARD OF REVIEW

■ "[A] claim of breach of fiduciary duty is an action at law[,] and the trial [court's] findings will be upheld unless without evidentiary support." *Jordan v. Holt,* 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005). Accordingly, our standard of review extends only to the correction of errors of law, and "we will not disturb the referee's factual findings that have some evidentiary support." *Jones v. Daley,* 363 S.C. 310, 314, 609 S.E.2d 597, 599 (Ct.App.2005).

## LAW/ANALYSIS

### I. Exclusion of a Witness

Billy contends the special referee erred in excluding Smith's testimony. We disagree.

■ "The decision of whether or not to allow a witness to testify who was not previously listed on answers to interrogatories rests within the sound discretion of the trial [court]." *Jumper v. Hawkins,* 348 S.C. 142, 150, 558 S.E.2d 911, 915 (Ct.App.2001) (citation omitted). "Exclusion of a witness is a sanction which should never be lightly invoked." *Id.* at 149, 558 S.E.2d at 915 (citation omitted). Before imposing the sanction of excluding a witness, a trial court is required to consider and evaluate several factors:

(1) the type of witness involved; (2) the content of the evidence emanating from the proffered witness; (3) the nature of the failure or neglect or refusal to furnish the witness' name; (4) the degree of surprise to the other party,

including the prior knowledge of the name of the witness; and (5) the prejudice to the opposing party.

*Id.* at 152, 558 S.E.2d at 916.

In *Barnette v. Adams Bros. Logging, Inc.*, the South Carolina Supreme Court found the trial court abused its discretion in excluding an expert witness when there was no disobedience of any court order and no prejudice to the opposing party other than necessity of further discovery. 355 S.C. 588, 593, 586 S.E.2d 572, 575 (2003). Additionally, our Supreme Court stated the exclusion rule is designed to promote decisions on the merits after a full and fair hearing, and the trial court's sanction should serve to protect the rights of discovery provided by the rules of civil procedure. *Id.* at 592, 586 S.E.2d at 574. In recognizing the potentially harsh sanctions a trial court may invoke in addition to the sanction of exclusion of a witness, our Supreme Court noted, "A sanction of dismissal is too severe if there is no evidence of any intentional misconduct." *Id.* (internal citations omitted).

Similarly, in *Orlando v. Boyd*, the South Carolina Supreme Court reversed the trial court's sanction when no evidence of intentional misconduct existed in the record to "warrant the exclusion of a crucial witness." 320 S.C. 509, 512, 466 S.E.2d 353, 355 (1996). Our Supreme Court held, "[When] the effect will be the same as granting judgment by default or dismissal, a preclusion order may be made only if there is some showing of willful disobedience or gross indifference to the rights of the adverse party." *Id.* at 511, 466 S.E.2d at 355.

Previously, this Court found it is within the trial court's discretion to allow an appropriate sanction when a party fails to strictly comply with a scheduling order. *Arthur v. Sexton Dental Clinic*, 368 S.C. 326, 338, 628 S.E.2d 894, 900 (Ct.App. 2006). Therefore, when noncompliance is undisputed, the question becomes whether the trial court abused its discretion in imposing exclusion of a witness as a sanction. *Id.* Though the trial court did not specifically enunciate the *Jumper* factors, this Court found the trial court "considered the requisite factors and made the appropriate inquiry before ultimately excluding the challenged witnesses." *Id.* at 339, 628 S.E.2d at 901.

In the present case, Billy attempted to call Smith as a witness, and Carl objected because Smith's name was not provided in the answers to interrogatories. Additionally, Carl was not informed Billy was calling Smith as a witness until the morning of the trial. The special referee allowed Billy to proffer Smith's testimony, and based on the content of Smith's proffer, the special referee excluded Smith as a witness. By virtue of the proffer, we find the special referee properly considered the *Jumper* factors. *Cf. Jumper*, 348 S.C. at 150–51, 558 S.E.2d at 916 ("[T]he court never made an inquiry into the content of the evidence [the expert witness] would offer. By not getting *any* information about the proposed witness' testimony, the court did not meet its duty of discovering and evaluating the content of the potential evidence.") (emphasis in original).

Billy wished to call Smith as a fact witness,[2] and through his proffer, Smith explained he had known Ardell his whole life and was his neighbor for several years. Smith also stated Ardell's will named the chairman of the board of deacons of their church as administrator of his estate. Further, Smith stated Ardell appeared lucid, competent, and able to understand conversations. Therefore, the special referee properly considered the type of witness Smith would be and the content of his proposed testimony as required by the first and second factors of *Jumper*.

Additionally, the special referee satisfied the third *Jumper* factor by considering the nature of Billy's failure to furnish Smith's name as a witness, stating, "It is clear from his testimony he is here as a result of a conversation with your client prior to ever receiving a letter from [Carl's attorney]. And the motivating factor was a personal contact with your client as opposed to notification that there was a trial."

---

2. We note *Barnette* and Orlando involved the exclusion of expert witnesses rather than the exclusion of a lay witness as in the present case. After excluding the expert witnesses, the trial courts dismissed the cases. *Barnette*, 355 S.C. at 591, 586 S.E.2d at 574; Orlando, 320 S.C. at 511, 466 S.E.2d at 355. The exclusion of Smith's testimony, however, did not lead to such a dramatic result. Further, Smith's testimony, while favorable to Billy, was not as crucial to the case as were the witnesses' testimonies in *Barnette* and *Orlando*. These distinctions support the conclusion the special referee's exclusion was not an abuse of discretion.

As to the fourth and fifth *Jumper* factors, this late notification inevitably created significant surprise and prejudice to Ardell's estate and its representatives. The failure to inform the estate until the morning of the trial that Smith would be a witness left the estate with an insufficient amount of time to adequately prepare for an examination of Smith and eliminated the estate's opportunity to depose Smith. *See Arthur*, 368 S.C. at 341, 628 S.E.2d at 902 (finding the respondent was significantly surprised and prejudiced when the appellant failed to give notice of two witnesses until the Friday before trial because the respondent was not able to depose the witnesses before trial).

Based on the foregoing, we find the special referee properly considered all factors set forth in *Jumper* when deciding to exclude Smith as a witness, and therefore, the exclusion was not an abuse of discretion.

## II. Involuntary Nonsuit

■ Billy also contends the special referee erred in failing to grant his motion for an involuntary nonsuit. Specifically, Billy argues Carl, as PR of Ardell's estate, is not the real party in interest. We disagree.

Rule 17(a), SCRCP, provides in part:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute so provides, an action for the use or benefit of another shall be brought in the name of the State.

■ Unless a party promptly challenges the opposing party's status as a real party in interest, such a challenge is waived. *Bardoon Props., NV v. Eidolon Corp.*, 326 S.C. 166, 169, 485 S.E.2d 371, 373 (1997) ("A challenge to a party's status as real party in interest must be made promptly or the court may conclude the point has been waived.").

We find Billy waived his right to challenge Carl's status as the real party in interest. Billy first raised this argument at

the close of trial.[3] Although Billy asserts he raised such a motion at the beginning of trial as well, the record is devoid of such evidence. As the appellant, Billy bears the burden of presenting a sufficient record for review. *See Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 339–40, 611 S.E.2d 485, 487–88 (2005) (stating the appellant has the burden of providing a sufficient record on appeal).

Because Billy has failed to provide a sufficient record for our review in this matter, we affirm the special referee's denial of Billy's motion for an involuntary nonsuit. *See Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 447, 494 S.E.2d 827, 834 (Ct.App.1997) (holding the appellate court must affirm the trial court on an issue when the appellant fails to provide adequate materials for this Court to consider the argument).

### III. Repayment from Property Sale

■ Finally, Billy argues the special referee erred in ordering him to repay monies from a sale of property when the special referee did not set aside the sale of property. We find this issue abandoned on appeal.

■ An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority. *Historic Charleston Holdings, L.L.C. v. Mallon*, 365 S.C. 524, 533 n. 7, 617 S.E.2d 388, 393 n. 7 (Ct.App.2005). Billy failed to cite any authority in support of his assertion the special referee erred in ordering him to repay proceeds from the sale of property. Therefore, Billy abandoned this issue on appeal, and we decline to consider the argument.

### CONCLUSION

Accordingly, the special referee's decision is

**AFFIRMED.**[4]

---

**3.** Billy argues Ardell appointed members of the Six Mile Baptist Church as executors of his estate through his will and made no provisions for a PR.

**4.** We decide this case without oral argument pursuant to Rule 215, SCACR.

THOMAS and PIEPER, JJ., concur.