**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Public Interest Foundation, Edward D. Sloan, Jr., Denise G. Davidson, and Milton Woods, Jr., individually and on behalf of all others similarly situated, Appellants,

v.

Jasper County School District and the Hon. Berty Riley, in her official capacity as Chairman of the Board of Trustees of the Jasper County School District, Respondents.

Appellate Case No. 2016-001148

Appeal From Jasper County
Thomas A. Russo, Circuit Court Judge

Unpublished Opinion No. 2018-UP-359
Heard June 7, 2018 – Filed August 22, 2018

**AFFIRMED**

James G. Carpenter, of Carpenter Law Firm, of Greenville, for Appellants.

Keith Robert Powell, of Duff & Childs, LLC, of Columbia, for Respondents.

**PER CURIAM:**  In this procurement case, Appellant South Carolina Public Interest Foundation (SC Public Interest) seeks review of the circuit court's order granting summary judgment in favor of Respondent Jasper County School District (School District) on SC Public Interest's claims.  SC Public Interest argues the circuit court should have declared the procurement method used by the School District to secure construction services for the renovation of its Bees Creek school facility violated the Jasper County Board of Education Procurement Code Policy (School District's Procurement Code).  SC Public Interest further maintains that while this case was pending in the circuit court, the Board of Trustees of the Jasper County School District (Board) passed a Resolution to suspend all actions on the Bees Creek contract that made the case unripe for judicial determination.  We affirm.

## I.      Summary Judgment

SC Public Interest maintains the circuit court erred on the merits of the order granting summary judgment to School District.  Specifically, SC Public Interest argues the following: (1) School District's Procurement Code, section 2-101, mandates the use of the competitive sealed bidding method; (2) School District's written determination was insufficient to satisfy the requirements for using the competitive sealed proposals method—specifically, School District should have issued the written determination prior to issuing the request for proposals; and (3) Board's Resolution attempting to ratify the design-build solicitation and award was ineffective because School District failed to adhere to the ratification process in section 6-403 of the School District's Procurement Code.[1]  We disagree.

### a.  Procurement Method

The South Carolina Consolidated Procurement Code (Consolidated Procurement Code) controls the "procurement or expenditure of funds by this State under contract acting through a governmental body."  S.C. Code Ann. § 11-35-40(2) (2011).  However, this excludes school districts, and instead, the South Carolina Consolidated Procurement Code authorizes a school district to adopt its own procurement policy.  S.C. Code Ann. § 11-35-50 (2011); *see also* § 11-35-310(18), (23) (2011) (defining "governmental body" to exclude all local "political subdivisions" such as school districts).

---

[1]The term "competitive sealed proposals" is also referred to as "request for proposals" or "design-build" process; "competitive sealed bidding" is also referred to as "invitation for bids" or "design-bid-build" process.  *See Sloan v. Dep't of Transp.*, 365 S.C. 299, 305, 618 S.E.2d 876, 879 (2005).

Section 2-101 of the School District's Procurement Code, entitled "Methods of source selection," states that "all school district contracts must be awarded by competitive sealed bidding." However, this section explicitly indicates that competitive sealed bidding should be used "[u]nless otherwise required by law or this policy." This language is indicative that section 2-101 was not intended to be an absolute rule devoid of any exceptions. Additionally, we note that section 2-101 lists five exceptions in which other procurement methods would be permissible, including the use of competitive sealed proposals.

Furthermore, a full review of School District's Procurement Code reveals that there are other provisions within the code that are applicable—specifically, Article 4. Article 4 of the School District's Procurement Code is entitled "Procurement of Construction, Architect/Engineer and Land Surveying Services." Section 4-101 provides, in part,

> *The school district will utilize the South Carolina School Facilities Planning and Construction Guide* prepared by the South Carolina Department of Education *for new construction, additions or renovations of structures used in connection with public education.* The school district must have discretion to select the appropriate construction contracting method for a particular project. In determining which method to use, the school district must consider its requirements, resources[,] and potential contractor capabilities.

(emphases added). School District's Procurement Code is unambiguous, and a plain reading of it indicates Article 4 governs the procurement method School District is authorized to use when soliciting construction services. *See Bayle v. S.C. Dep't of Transp.*, 344 S.C. 115, 122, 542 S.E.2d 736, 739–40 (Ct. App. 2001) ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. [When] the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."). We now further examine section 4-101 to determine whether School District adhered to the provisions set forth therein.

Section 4-101 references the South Carolina School Facilities Planning and Construction Guide (Construction Guide). Generally, school districts must comply

with the standards and specifications set forth in the Construction Guide when constructing, improving, or renovating a public school building or property. S.C. Code Ann. § 59-23-210(A) (Supp. 2017). The Construction Guide is updated annually by the State Department of Education Office of School Facilities. *Id.* Therefore, School District must use the procurement methods authorized in the Construction Guide for the renovation of its Bees Creek facility. The procurement section of the Construction Guide provides that the Office of School Facilities "recognizes all procurement methods authorized and defined in" sections 11-35-2910 & 3005 of the South Carolina Code (2011), which are part of the Consolidated Procurement Code.[2]

With this in mind, we turn our attention to section 11-35-3005, as referenced in the Construction Guide, to determine the authorized procurement methods in this state. Section 11-35-3005, entitled "Project delivery methods authorized," lists the following authorized procurement methods:

> (a) design-bid-build;
> (b) construction management at-risk;
> (c) operations and maintenance;
> (d) *design-build*;
> (e) design-build-operate-maintain; and
> (f) design-build-finance-operate-maintain.

S.C. Code Ann. § 11-35-3005(1) (2011) (emphasis added). The Consolidated Procurement Code specifically lists "design-build" as an authorized method of procurement, which means the Construction Guide also recognizes this method. Thus, the competitive sealed proposals method was a viable option for the school district. *See supra* n. 1 (recognizing "design-build" as a reference to competitive sealed proposals).

Additionally, Article 4 of School District's Procurement Code grants School District the ability to use its discretion in determining which procurement method is the most suitable for the project at hand. The Board exercised that discretion and opted to use the competitive sealed proposal method. Our courts give great

---

[2]*2014 South Carolina School Facilities Planning and Construction Guide*, SOUTH CAROLINA DEPARTMENT OF EDUCATION, https://ed.sc.gov/scdoe/assets/File/districts-schools/school-planning-building/Guides/2014Guidebook.pdf.

deference to the decisions of school boards. *See Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 635, 620 S.E.2d 65, 68 (2005) ("In general, courts will not disturb matters within the school board's discretion unless there is clear evidence of corruption, bad faith, or a clear abuse of power."). Thus, "an appellate court will not substitute its judgment for that of the school board's in view of the powers, functions, and discretion that must necessarily be vested in such boards if they are to execute the duties imposed upon them." *Id.*

b. Written Determination

Section 2-103 of School District's Procurement Code, entitled "Competitive sealed proposals," sets forth the requirements and procedures the Board must adhere to when using this procurement method. Subsection one articulates the conditions under which this method is to be used. It provides,

> When the school district *determines in writing* that the use of competitive sealed bidding is either not practicable or not advantageous to the school district, *a contract may be awarded by competitive sealed proposals*. Competitive sealed proposals should be used when both the needs of the school district and the costs to satisfy those needs are important, and the methods or items to satisfy those needs are not clear and precise. While price is an important factor, it is considered less significant than fully meeting the district's needs. The ultimate purpose of this method of procurement is to provide flexibility to the district, while taking into consideration various options and the costs of each. Proposals must be solicited through a request for proposals.

(emphases added). A plain reading of section 2-103 indicates the Board is required to produce a written determination prior to awarding a contract when using the competitive sealed proposal method instead of the competitive sealed bidding method. *See Sloan v. Greenville Cty.*, 356 S.C. 531, 563, 590 S.E.2d 338, 355 (Ct. App. 2003) ("The words of a statute or regulation 'must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation.'" (quoting *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992))); *id.* at 564, 590 S.E.2d at 355 ("The language must also be read in a sense [that] harmonizes with its subject matter and accords with its general purpose."). Here, the Board issued its request for proposals on July 14, 2014.

The written determination was issued on October 10, 2014, which provided the citizens of Jasper County School District with an explanation of the Board's decision to utilize the design-build method. Subsequently, School District awarded the Bees Creek contract on November 14, 2014. Thus, it is evident that the written determination satisfied the pre-contract requirement of section 2-103.

SC Public Interest makes additional arguments attacking the sufficiency of the written determination. It alleges School District failed (1) to evaluate or rank the proposals, (2) to determine which proposal was the most advantageous to School District, and (3) to keep a copy of the written determination in the contract file. However, SC Public Interest raises these issues for the first time on appeal. Therefore, the issues are not preserved for appellate review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review."); *see also Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 25, 602 S.E.2d 772, 780 (2004) ("If a party is unsure whether he properly raised all issues and obtained a ruling, he must file a Rule 59(e) motion or an appellate court may later determine the issue or argument is not preserved for review.").

c. Board Resolution

The circuit court did not address whether section 6-403 of School District's Procurement Code was applicable in the current litigation, nor did it address any of SC Public Interest's arguments regarding this section. And SC Public Interest did not request the circuit court to address these arguments when it filed its Rule 59(e) motion. *See Wilder Corp.*, 330 S.C. at 77, 497 S.E.2d at 734 ("Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the [circuit] court but not yet ruled upon by it."). Therefore, the issue is unpreserved for appellate review. *See Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding an issue is not preserved when the circuit court does not explicitly rule on a question and the appellant fails to make a Rule 59(e) motion to alter or amend the judgment on that ground); *see also Williams v. Lancaster Cty. Sch. Dist.*, 369 S.C. 293, 306, 631 S.E.2d 286, 294 (Ct. App. 2006) (holding a husband failed to preserve for appellate review his claim that the circuit court erred in granting summary judgment as to his claim for loss of consortium; although the husband brought the claim in his complaint, the circuit court did not rule on the issue, and the husband failed to make a motion to alter or amend the judgment on that ground).

For the aforementioned reasons, the circuit did not err in granting summary judgment to School District.

## II.    Ripeness

SC Public Interest contends the Board's Resolution to suspend all actions on the Bees Creek contract made the case unripe for judicial determination, and therefore, granting summary judgment was improper. However, SC Public Interest failed to cite any case law or authority in support of its argument. Thus, this issue is abandoned and not preserved for appellate review. *See Bryson v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct. App. 2008) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."); *see also Glasscock, Inc. v. U.S. Fidelity and Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

Even if the argument were preserved, the argument is without merit because a justiciable controversy existed and needed to be resolved. *See Colleton Cty. Taxpayers Ass'n v. Sch. Dist. Of Colleton Cty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006) ("A justiciable controversy is a real and substantial controversy [that] is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical, or abstract dispute." (quoting *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 227, 467 S.E.2d 913, 917–18 (1996))); *id.* ("[A]n issue that is contingent, hypothetical, or abstract is not ripe for judicial review."). Here, soon after awarding its construction contract to a contractor using the competitive sealed proposal method, School District and its contractor commenced work on the Bees Creek project. However, due to SC Public Interest's claims seeking to invalidate the procurement of the design-build contract, progress on the Bees Creek project halted. The Board's Resolution indicates that progress came to a halt because of the uncertainty over payment to the contractor for the services the contractor was to provide under the contract. Essentially, the pending lawsuit would determine how the Board would need to proceed regarding its contractual obligations to the contractor and the Bees Creek project. Thus, the issues that were presented to the circuit court were all ripe for judicial determination because they concerned the validity of the Bees Creek contract. Furthermore, the Board's Resolution evidenced the need for the issues to be resolved.

**AFFIRMED.**

**HUFF, GEATHERS, and MCDONALD, JJ., concur.**