580 S.E.2d 128

Cynthia BENSCH and Gary Bensch, d/b/a Bensch–
Mark Custom Builders, Respondents,

v.

Jim DAVIDSON, Linda Davidson and Randy West, Defendants,

of whom Jim Davidson and Linda Davidson are Appellants.

No. 25633.

Supreme Court of South Carolina.

Heard March 6, 2003.

Decided April 28, 2003.

Otto W. Ferrene, Jr., of Ferrene & Associates, PA, of Hilton Head Island, and William E. Bird, of Bird Law Firm, PA, of Columbia; for appellants.

Curtis Lee Coltrane, of Coltrane & Alford, PC, of Hilton Head Island, for respondents.

Justice MOORE:

We are asked to determine whether the trial court made certain errors in this breach of contract action. We affirm.

## FACTS

Respondents, residential home builders, and appellants entered into a contract for the construction of a home in the Rose Hill Plantation development. No fixed time was set for the completion of the contract.

From the outset of construction, appellants requested several material changes to both the construction method and the house design. These changes resulted in more expenses and affected the timeline of finishing the house, especially when some of the changes were requested after work had been completed. Some, but not all, of the changes were reduced to writing in the form of change orders.

Respondents also encountered problems when appellants had additional contractors appear unannounced on the jobsite to do certain jobs. In March 1998, respondents sent a letter to appellants regarding their use of third-party contractors and informed them that two of the contractors appellants hired had created drainage problems.

The contract between appellants and respondents called for respondents to submit regular requests for progress payments as construction was completed.[1] Respondents submitted draw requests and written change orders to appellants. Appellants paid the first three draw requests and some of the change orders. The last payment respondents received was on November 5, 1997. Subsequently, two draw requests were submitted to appellants, however, the requests were not paid. Respondents continued working for four months after receiv-

---

1. The contract stated, "Progress payments shall be paid immediately to Contractor as billed on completed work. After five (5) days, failure to pay progress payments constitutes default under this contract."

ing the last payment and continued to pay suppliers and subcontractors until they ran out of money.[2]

On April 9, 1998, appellants' attorney sent a letter to respondents terminating them from the job immediately. Appellant Jim Davidson admitted on cross-examination that, at the time of termination, there was still work to be done under the contract and the change orders.

Prior to terminating respondents, appellants contacted Randy West, a general contractor, to have him determine whether the percentage of completion of the house was consistent with the amount of money that had been paid to respondents. West visited the job site and determined the statement of completion was not consistent with the amount that had been paid. However, West recommended that respondents be allowed to finish the job. After respondents were terminated, West agreed to complete the job and correct certain items.

Respondents brought an action against appellants. Appellants counterclaimed seeking damages for breach of contract as a result of respondents' defective and incomplete performance and damages for two other counterclaims.

Appellants alleged respondents built the house approximately two feet below the elevation level called for in the plans and failed to put in fill dirt to raise the level of the lot where the house would be placed. Appellants alleged the lack of fill dirt caused water to pool in and around the home.

At the close of the evidence, the court found appellants had breached the contract as a matter of law. Appellants' counterclaim for damages alleged to result from the failure of respondents to site the house properly on the lot and respondents' claims for damages and lost profits were submitted to the jury.

The jury returned a verdict in respondents' favor for appellants' breach of contract. The jury also, on a separate verdict form, found for appellants on their claim regarding the failure of respondents to site the house properly on the lot; however, the jury did not award any damages to appellants.

---

**2.** As a result, one supplier received a judgment against respondents for failure to pay.

## ISSUE I

Did the trial court err by charging the wrong measure of damages for prevention of contractual performance?

## DISCUSSION

 Respondents requested the trial court charge the law under *Warren v. Shealy*, 83 S.C. 113, 65 S.E. 1 (1909), that appellants cannot recover for the costs they incurred to complete the house because they had refused to permit respondents to fulfill their performance of the contract. Appellants objected that the proposed charge would allow respondents to recover the full amount left on the contract when, due to their termination, they had not incurred certain costs. The trial court charged the jury as requested by respondents:

An owner of a building under construction, under a contract providing for payment of the price of the completion of work, who refuses to permit the contractor to complete the work is liable for the contract price less payments made and cannot counterclaim for the amount paid for finishing the building.

Appellants contend the expenses respondents did not incur should be reduced from the claim for the balance of the contract that was due to be paid. Appellants distinguish *Warren v. Shealy* because that case involved a contract for services only, and not a contract, as here, for services *and* materials. In *Warren*, appellants argue, it was appropriate for the non-breaching party to recover the full amount due under the contract because those damages represented profit or unpaid labor, not material costs that otherwise did not occur as a result of performance being prevented.

Appellants' assessment of *Warren v. Shealy* is correct. However, the trial court in this case in fact charged exactly what appellants are arguing the court should have charged. The trial court charged that after partially performing a contract, one who is wrongfully prevented from completing the contract may recover actual expenditures and damages for lost profits. The court also charged that the measure of damages for the breach of a contract is the loss actually suffered as a result of the breach. Further, the court charged that respondents' damages consist of out-of-pocket costs actually incurred

as a result of the contract and the gain above the costs that would have been realized had the contract been performed. Therefore, appellants' argument that the trial court failed to charge the correct measure of damages is without merit. *See South Carolina Fin. Corp. of Anderson v. West Side Fin. Co.*, 236 S.C. 109, 113 S.E.2d 329 (1960) (measure of damages for breach of contract is loss actually suffered by contractee as result of breach).

Appellants further assert *Warren* should not have been charged because the issue of appellants' counterclaim for the cost to complete the house had been removed from the jury's consideration. While it may have been unnecessary for the trial court to give the *Warren* charge, reading the charge as a whole, it is clear the court informed the jury of the correct measure of damages. The charge adequately covered the law of damages resulting from a breach of contract where one party is prevented from completing performance under the contract. We find the jury was not confused or misled by the *Warren* instruction. *See Keaton ex rel. Foster v. Greenville Hosp. System*, 334 S.C. 488, 514 S.E.2d 570 (1999) (jury charge correct if when charge read as whole, it contains correct definition and adequately covers law); *see also State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994) (jury instructions should be considered as whole, and if as whole they are free from error, any isolated portions which may be misleading do not constitute reversible error); *State v. Rabon*, 275 S.C. 459, 272 S.E.2d 634 (1980) (jury charge which is substantially correct and covers law does not require reversal).

## ISSUE II

Did the trial court err by failing to require jury re-deliberation to correct the verdict?

## DISCUSSION

The jury was given two verdict forms. One form represented respondents' action against appellants for breach of contract. This form requested the jury answer whether they found for respondents and if they found for respondents, they were to determine the amount of damages. The second verdict form covered appellants' counterclaim for breach of

contract against respondents. The form asked whether the jury found for appellants and if the jury found for appellants, they were to "state the total amount of actual damage, if any, sustained by [appellants.]"

The jury returned a verdict finding for respondents in the amount of $129,000. On appellants' counterclaim, the jury found for appellants but did not find any damages. The trial court *sua sponte* clarified with the jury that their verdict on the counterclaim was a breach by respondents but no damages. At appellants' request, the court polled the jury and found the verdict stood.

Appellants argue the jury should have re-deliberated given the jury found for appellants on their claim, but nevertheless did not find any damages. They argue the court dismissed the jury without giving appellants an opportunity to request re-deliberation.

This issue is not preserved for our review. Appellants did not object to the verdict at the time it was rendered, failed to request that the verdict be resubmitted for clarification, and allowed the jury to be discharged before voicing their objection to the verdict. *See Dykema v. Carolina Emergency Physicians, P.C.,* 348 S.C. 549, 560 S.E.2d 894 (2002) (party may not allow jury to be discharged in face of obviously defective verdict, which could easily be corrected upon resubmission to jury); *Stevens v. Allen,* 342 S.C. 47, 536 S.E.2d 663 (2000) (when issue raised, trial judge should resubmit verdict assessing liability but awarding zero damages to jury with instructions to either find for defense or award some amount of damages); *Smith v. Phillips,* 318 S.C. 453, 458 S.E.2d 427 (1995) (no duty imposed on trial judge to question jury's verdict of liability, but no damages, unless requested to by a party); *Limehouse v. Southern Ry.,* 216 S.C. 424, 58 S.E.2d 685 (1950) (where verdict is objectionable as to form, party who desires to complain should call that fact to court's attention when verdict is published. Otherwise, right to do so is waived). Further, appellants did not object to the trial court's charge on the verdict form or the actual verdict form itself which stated that if the jury should find for appellants on their counterclaim, the jury was to "state the total amount of actual damage, *if any,* sustained by" appellants. The "if any" lan-

guage in the verdict form indicated the jury could find no damages even if they found for appellants on their counterclaim. *See Holy Loch Distribs., Inc. v. Hitchcock,* 340 S.C. 20, 531 S.E.2d 282 (2000) (to preserve issue for appellate review, issue must have been raised to and ruled upon by trial court).

## ISSUE III

Did the trial court err by eliminating from the jury's consideration the issue whether appellants had breached the contract?

## DISCUSSION

■ The trial court found appellants had breached the contract as a matter of law because appellants admitted they terminated respondents from the job without giving respondents an opportunity to correct the errors they alleged.

Given appellants admitted on cross-examination that, at the time they terminated respondents, there was still work to be done under the contract, the trial court properly found that appellants breached the contract as a matter of law because the evidence on this issue was not susceptible of more than one reasonable inference. *Cf. Jones v. Ridgely Communications, Inc.,* 304 S.C. 452, 405 S.E.2d 402 (1991) (jury issue exists where evidence is susceptible of more than one reasonable inference).

Appellants argue the jury was entitled to determine whether appellants' termination of respondents was justifiable. However, appellants did not present any evidence that the termination was justifiable. Appellants' own advisor, Randy West, testified that, although he felt respondents' statements of completion on their draw requests were not consistent with the amount that had been paid by appellants, he advised appellants to allow respondents to finish the job. Further, while West testified that he corrected certain items performed by respondents after the contract termination, there was no evidence that respondents were given a chance to correct these items prior to termination or that they would not have corrected these items on their own accord prior to completing the house.

Accordingly, the trial court properly found appellants had breached the contract as a matter of law when they terminated respondents from the job prior to completion of the house.

## ISSUE IV

Did the trial court abuse its discretion by excluding expert testimony?

## DISCUSSION

■ Prior to trial, in response to interrogatories propounded by respondents, appellants stated: "[Appellants,] at this time, do not plan to use any expert witnesses. If an [sic] when one is identified, his identity will be revealed to [respondents.]" In response to the interrogatory asking what witnesses, other than experts, appellants planned to use, appellants listed West. When this response was supplemented by a second response several months later, no expert witnesses were identified.

At trial, respondents moved to exclude the expert testimony of Randy West. Respondents argued they were not informed West would be used as an expert at trial. Appellants countered that because they had indicated West would be a witness and that respondents had deposed West, allowing him to testify as an expert would not be a surprise to respondents.

The trial court ruled West could not testify as an expert due to appellants' failure to list him as an expert witness. The court found the failure to list West as an expert prevented respondents from possibly hiring their own expert. The court also felt that, given appellants terminated respondents from the job before they had completed the job or been given an opportunity to correct any alleged defects in the work, West's testimony about the quality of the workmanship would be irrelevant. The court stated West could testify as to his observations of the property, but not the quality of the workmanship.

■ By the terms of Rule 33, SCRCP, "interrogatories shall be deemed to continue from the time of service, until the time of trial of the action so that information sought, which comes to the knowledge of a party, or his representative or

attorney, after original answers to interrogatories have been submitted, shall be promptly transmitted to the other party." Therefore, there is a continuing duty on the part of the party from whom information is sought to answer a standard interrogatory, such as the one requesting the party list any expert witnesses whom the party proposes to use as a witness at the trial of the case.

■ The parties' disclosure of information before trial is designed to avoid surprise and to promote decisions on the merits after a full and fair hearing. *Reed v. Clark*, 277 S.C. 310, 286 S.E.2d 384 (1982). When it appears a violation of Rule 33 has occurred, it lies within the discretion of the trial court to decide what sanction, if any, should be imposed. *Jackson v. H & S Oil Co., Inc.*, 263 S.C. 407, 211 S.E.2d 223 (1975) (case decided under former Circuit Court Rule 90). The sanction of excluding a witness should never be lightly invoked. *Kirkland v. Peoples Gas Co.*, 269 S.C. 431, 237 S.E.2d 772 (1977). Before so ruling, the trial court should ascertain the type of witness involved, the content of the evidence, the explanation for the failure to name the witness in answer to the interrogatory, the importance of the witness' testimony, and the degree of surprise to the other party. *Laney v. Hefley*, 262 S.C. 54, 202 S.E.2d 12 (1974).

We find the trial court justifiably determined appellants should be sanctioned for failing to list West as an expert witness in their responses to the interrogatories. The trial court properly considered several factors as dictated by *Laney v. Hefley, supra*.

First, the court looked at appellants' explanation for their failure to name West as an expert. Appellants informed the court West was not listed as an expert because appellants did not think West would have to be qualified as an expert to testify to defects in the construction.

Second, the court considered the importance of West's testimony. The court indicated West's testimony on the quality of workmanship was irrelevant given appellants had breached the contract by terminating respondents from the job before the work was completed. The court also noted that the content of West's proposed testimony had already been pre-

sented to the jury through appellant Jim Davidson's testimony.

Finally, the court considered the degree of surprise to respondents. The court found, by not listing West as an expert witness, respondents were prevented from possibly hiring their own expert.

Considering the factors as outlined in *Laney*, the trial court did not abuse its discretion by excluding West's testimony regarding the quality of respondents' workmanship. *See Hoeffner v. The Citadel*, 311 S.C. 361, 429 S.E.2d 190 (1993) (trial court's ruling on admission of evidence will not be disturbed on appeal absent abuse of discretion amounting to error of law).

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.