705 S.E.2d 457

**Kenneth B. JENKINS, Respondent,**

v.

**Benjamin Scott FEW and Few Farms, Inc., Appellants.**

No. 4763.

Court of Appeals of South Carolina.

Heard June 22, 2010.

Decided Dec. 8, 2010.

Rehearing Denied Feb. 28, 2011.

214

J. Falkner Wilkes, Jr., and Robert Clyde Childs, III, of Greenville, for Appellants.

Fred W. Suggs, III, of Greenville, for Respondent.

LOCKEMY, J.

In this tort action, a jury found Benjamin Scott Few and Few Farms, Inc. (collectively "Few") liable to Kenneth B. Jenkins for damage to his fertilizer truck and lost profits. On appeal, Few maintains the trial court erred by failing to grant his motions for a directed verdict and in qualifying an expert witness. Few also contends the trial court erred by declining to reduce actual and punitive damages. We affirm in part and reverse in part.

## FACTS

Few and Jenkins are competitors in the fertilizer and lime spreading business. Jenkins had reason to believe Few hired two individuals to place sugar in the gas tank of his Ford F–700 fertilizer truck on two separate occasions for the purpose of interfering with his business. Consequently, Jenkins brought suit against Few alleging trespass, conversion, civil

conspiracy, and violation of South Carolina's Unfair Trade Practices Act.[1]

At trial, two witnesses testified Few asked them to sabotage Jenkins's fertilizer truck. The first witness, Buford Stokes, a friend of Few's, testified Few called him and asked whether putting sugar or metal filings into a gas tank would cause more damage to a truck. After Stokes replied that he understood sugar would do the most damage, Few expressed his desire to destroy a competitor's fertilizer business.

The second witness, Johnny Lindsey, testified Few also telephoned him about putting sugar in a gas tank. According to Lindsey, during their conversation Few indicated he wanted to place sugar in the gas tank of Jenkins's fertilizer truck. Lindsey initially declined to help Few and handed the phone to a friend, Billy Guest, who made arrangements to sabotage Jenkins's truck for Few. The pair met with Few and acquired the sugar. Later, Guest put the sugar in the gas tank of Jenkins's truck while Lindsey waited in the get-a-way car.

Lindsey explained Few paid him $100 for his part in the sabotage of Jenkins's truck. After learning Jenkins's truck was still operable, Few called Lindsey again and asked him to sabotage the truck a second time. This time Lindsey put five pounds of sugar into a gas can and poured it into Jenkins's truck for another $100. Eventually, Lindsey turned himself in to the police and pled guilty to malicious damage for his role in sabotaging Jenkins's fertilizer truck. Lindsey was ordered to pay Jenkins $220 in restitution.

After learning Jenkins's truck was sabotaged, Stokes explained he met with Jenkins and told him about his conversation with Few. According to Stokes, Few called him after he met with Jenkins and threatened him. Few denied contacting Stokes or Lindsey regarding sabotaging Jenkins's truck and denied any involvement in interfering with Jenkins's fertilizer business.

At the end of Jenkins's case, Few moved for a directed verdict on civil conspiracy and conversion. The trial court denied Few's motions and after the close of Few's case, charged the jury on unfair trade practices, conversion, civil

1. S.C.Code Ann. §§ 39–5–10, –560 (1985 & Supp.2009).

conspiracy, and trespass. The jury found in favor of Jenkins on trespass, conversion, and civil conspiracy. The jury found in favor of Few on the unfair trade practices claim. On a general verdict form, the jury awarded Jenkins $28,000 in actual damages and $100,000 in punitive damages. After the verdict was published, Few moved for (1) a new trial absolute on trespass of personal property, conversion, and civil conspiracy and (2) a new trial nisi remittitur on actual damages. Few also sought a post verdict review of the punitive damages award. The trial court denied both motions and declined to set aside or modify the punitive damages award. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in denying Few's motion for a directed verdict on civil conspiracy?

2. Did the trial court err in denying Few's motion for a directed verdict on conversion?

3. Did the trial court err in declining to exclude Stokes as a witness and qualifying Stokes as an expert?

4. Did the trial court err in declining to reduce the jury's award of actual damages?

5. Did the trial court err in finding the jury's punitive damages award comported with due process?

## LAW/ANALYSIS

### I. Directed Verdict Issues

#### A. Standard of Review

In reviewing the denial of a directed verdict motion, this court employs the same standard as the trial court: we view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Welch v. Epstein,* 342 S.C. 279, 299–300, 536 S.E.2d 408, 418 (Ct.App.2000). "This [c]ourt will reverse the trial court only when there is no evidence to support the ruling below." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

## B. Civil Conspiracy

■ Few argues the trial court erred in denying his motion for a directed verdict on civil conspiracy because Jenkins failed to demonstrate damages beyond those alleged in other causes of action. We disagree.

■ "The tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage." *Hackworth v. Greywood at Hammett LLC,* 385 S.C. 110, 115, 682 S.E.2d 871, 874 (Ct.App.2009). "[T]he gravamen of the tort is the damage resulting to plaintiff from an overt act done pursuant to a common design." *Id.* "Because the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Pye v. Estate of Fox,* 369 S.C. 555, 568, 633 S.E.2d 505, 511 (2006).

In his complaint, Jenkins alleged special damages from the civil conspiracy as "including, but not limited to, the destruction of [his fertilizer truck], and the loss of revenue for the nine days which [he] could not operate his business." Jenkins did not allege lost profits in regard to any other cause of action. At trial, Jenkins testified, without objection, that he could not operate his spreading business for 8.16 days and lost $5,891 in profits. Additionally, Jenkins explained he incurred $2,035 in costs related to offering and paying a reward for information leading to the parties responsible for sabotaging his truck. We conclude evidence supports the trial court's ruling that Jenkins alleged and demonstrated special damages. Accordingly, the trial court properly denied Few's motion for a directed verdict on civil conspiracy.

## C. Conversion

■ Few argues the trial court erred in denying his motion for a directed verdict on conversion because the record contains no evidence he wrongfully assumed and exercised the right of ownership over Jenkins's fertilizer truck. We agree.

■■ Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights." *Owens v. Andrews Bank & Trust Co.,* 265 S.C. 490,

218

496, 220 S.E.2d 116, 119 (1975). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's chattel." *Id.*

Here, the record reveals no evidence Few wrongfully assumed and exercised the right of ownership over Jenkins's fertilizer truck. Jenkins argues the damage to his truck so altered its condition that Few wrongfully assumed and exercised the right of ownership.[2] However, Jenkins cites no South Carolina authority in support of this proposition. Instead, Jenkins points to his testimony Few "took control" of the truck by sabotaging it and that Few "took possession of [his] truck" because he could not use it after sugar was placed in the gas tank. These statements indicate Few interfered with the truck, not that he wrongfully assumed and exercised the right of ownership over the truck. Because Jenkins presented no evidence Few wrongfully assumed and exercised the right of ownership or illegally used or misused the truck, we find the trial court erred in denying Few's motion for a directed verdict on conversion.

## II. Expert Witness

Few argues the trial court erred in allowing Stokes to testify as an expert witness because he lacked the necessary qualifications and Few was not provided with notice Jenkins intended to call Stokes as an expert. We disagree.

Generally, "[t]he admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal." *Gamble v. Int'l Paper Realty Corp. of S.C.*, 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996). Also, "[w]here a party fails timely to disclose the identity of an expert witness, the question of whether the witness'[s] testimony may be received in evidence

2. The Restatement of Torts appears to support this contention: "One who intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character is subject to liability for conversion." Restatement (Second) of Torts § 226 (1965). Absent a change in identity there still may be conversion if "the change materially affects the value of the chattel to the plaintiff for the normal uses to which such chattels are put." *Id.* at § 226 cmt. d. However, no South Carolina case has adopted this view of conversion.

is left largely to the discretion of the trial judge." *Tribble v. Hentz*, 285 S.C. 616, 618, 330 S.E.2d 560, 562 (Ct.App.1985).

Pursuant to Rule 33(b)(6), SCRCP, counsel has a duty to disclose "any expert witnesses whom the party proposes to use as a witness at the trial of the case." This rule imposes an ongoing duty to supplement interrogatory answers to reflect the addition of a witness or the intention to call a listed witness as an expert. Rule 33(b); *Bensch v. Davidson*, 354 S.C. 173, 182, 580 S.E.2d 128, 132 (2003) ("[T]here is a continuing duty on the part of the party from whom information is sought to answer a standard interrogatory, such as the one requesting the party list any expert witnesses whom the party proposes to use as a witness at the trial of the case."). The trial court has the discretion to determine whether a sanction is warranted for a violation of Rule 33(b)'s continuing duty to disclose information. *Bensch*, 354 S.C. at 182, 580 S.E.2d at 133. "The sanction of excluding a witness should never be lightly invoked." *Id.* Before excluding a witness as a sanction for violating the continuing duty to disclose information the trial court should ascertain (1) the type of witness involved, (2) the content of the evidence, (3) the explanation for the failure to name the witness in answer to the interrogatory, (4) the importance of the witness's testimony, and (5) the degree of surprise to the other party. *Id.*

We are cognizant of the similar factors outlined in *Jumper v. Hawkins*, and applied by a number of subsequent cases. 348 S.C. 142, 558 S.E.2d 911 (Ct.App.2001); *see, e.g., Callen v. Callen*, 365 S.C. 618, 620, 628 S.E.2d 59 (2005); *Barnette v. Adams Bros. Logging, Inc.*, 355 S.C. 588, 586 S.E.2d 572 (2003); *Bryson v. Bryson*, 378 S.C. 502, 662 S.E.2d 611 (Ct.App.2008); *Arthur v. Sexton Dental Clinic*, 368 S.C. 326, 628 S.E.2d 894 (Ct.App.2006). However, we conclude the *Bensch* factors are more appropriate because the record before us indicates Jenkins listed Stokes as a fact witness but failed to later supplement his interrogatory answer to indicate his intention to call Stokes as an expert witness. In sum, Jenkins violated Rule 33(b)'s continuing duty of disclosure. Because this was the precise issue in *Bensch*, we apply the *Bensch* factors.

We find the trial court made the appropriate considerations before declining to exclude Stokes as an expert

witness. Here, the trial court determined Jenkins was calling Stokes as an expert witness and would testify that introducing sugar into a gas tank could damage an engine. Jenkins's counsel explained he first listed Stokes as a fact witness but reserved the right to make a later determination about calling him as an expert witness. However, after deciding to call Stokes as an expert witness, Jenkins's counsel inadvertently failed to supplement his interrogatory answer. The trial court found this mistake was not the result of bad faith. The trial court also determined other experts would testify regarding the effect of sugar on an engine. Finally, the trial court found the degree of surprise and prejudice to Few was low because Stokes testified to the same thing during his deposition and Few's counsel had the opportunity to cross-examine him during an *in camera* proffer of his testimony. Accordingly, we conclude the trial court did not abuse its discretion in admitting Stokes as an expert witness.

We now turn to Few's contention the trial court erred in qualifying Stokes as an expert. During the *in camera* proffer, Stokes testified he was a certified automobile mechanic with two years' experience. Stokes also explained he worked on two cars about which he was told had sugar placed in their gas tanks. Based on Stokes's training and experience, the trial court qualified him as an expert in automobile mechanics. Few alleges the trial court erred in qualifying Stokes as an expert because he lacked personal knowledge of whether the automobiles he worked on actually had sugar placed in their gas tanks. Stokes's lack of personal knowledge goes to the weight of his testimony and not its admissibility. *See Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 400, 618 S.E.2d 903, 908 (2005) (holding experts lack of firsthand knowledge "goes to the weight of the testimony, not its admissibility"). Accordingly, we find the trial court did not abuse its discretion in qualifying Stokes as an expert witness. *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005) (noting a trial court's decision to qualify a witness as an expert will not be disturbed absent an abuse of discretion).

### III. Actual Damages

Few argues the trial court erred in declining to reduce the jury's award of actual damages for trespass to

personal property. According to Few, the actual damages award is excessive because it exceeds the diminution in value or damage to Jenkins's fertilizer truck and appears to be based on the value of a new truck Jenkins purchased. We disagree.

Few's argument hinges on a finding trespass to personal property is the only surviving cause of action and asks us to speculate as to the amount of actual damages attributable to trespass to personal property. Both civil conspiracy and trespass to personal property support the jury's actual damage award. Few contributed to drafting and agreed to use a general verdict form that did not include a separate damages award for each cause of action. Because the verdict was a general verdict, it is impossible to determine how the jury allocated damages between civil conspiracy, conversion, and trespass to personal property. We will not speculate as to how the jury allocated damages. *See Armstrong v. Collins,* 366 S.C. 204, 227, 621 S.E.2d 368, 379 (Ct.App.2005) (finding "[b]ecause the verdict was a general verdict, we cannot now speculate as to how the jury allocated damages"). Accordingly, we will not disturb the trial court's ruling on this issue.

### IV. Punitive Damages

Few argues the trial court erred in failing to reduce the punitive damages award. Specifically, Few maintains that based on the actual damage to Jenkins's fertilizer truck caused by his trespass to personal property, the award of punitive damages is excessive. We disagree.

In evaluating the constitutionality of a punitive damages award, we conduct a de novo review. *Mitchell v. Fortis Ins. Co.,* 385 S.C. 570, 583, 686 S.E.2d 176, 183 (2009) (holding "our appellate courts must conduct a de novo review when evaluating the constitutionality of a punitive damages award"). Accordingly, we apply the test articulated in *Mitchell* and consider (1) the degree of reprehensibility of Few's conduct, (2) the disparity between the actual harm suffered and the amount of punitive damages awarded by the jury, and (3) the difference between punitive damages awarded by the jury and those awarded in similar cases. *See id.* at 587–89, 686 S.E.2d

222

at 185–86. (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)).[3]

## A.   Reprehensibility

In considering the degree of reprehensibility, a court should consider whether:

(i) the harm caused was physical as opposed to economic; (ii) the tortious conduct evinced an indifference to or a reckless disregard for the health or safety of others; (iii) the target of the conduct had financial vulnerability; (iv) the conduct involved repeated actions or was an isolated incident; and (v) the harm was the result of intentional malice, trickery, or deceit, rather than mere accident.

*Id.* at 587, 686 S.E.2d at 185 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)).  Here, Jenkins suffered economic harm.  The damage to his fertilizer truck caused him to lose revenue for the eight days he could not operate his business.  Further, the record contains no evidence Few evinced an indifference to or a reckless disregard towards Jenkins's health or safety.  However, Few deliberately targeted Jenkins's truck and business during the fertilizer spreading season when he knew Jenkins would be the most busy, ensuring he would inflict the most economic harm to his competitor.  Additionally, after learning his first attempt failed to render the truck nonoperational, Few sabotaged the truck a second time.  Few acted with intentional malice expressing his desire to put Jenkins out of business to both Stokes and Lindsey. Few also perpetrated a clandestine conspiracy to accomplish his goal of sabotaging Jenkins's truck.  Weighing the above factors, we find Few's conduct was highly reprehensible.

## B.   Ratio

Courts must ensure that punitive damages are "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Camp-*

---

3.  We note the post-trial review factors outlined in *Gamble v. Stevenson*, 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991) are still applicable, but only within the context of the test articulated in *Mitchell*, 385 S.C. at 587, 686 S.E.2d at 185.

*bell,* 538 U.S. at 426, 123 S.Ct. 1513. Although there is no constitutional limit on the ratio between harm and damages recovered, single-digit multipliers are more likely to comport with due process. *Id.* at 424–25, 123 S.Ct. 1513. In determining reasonableness, courts may consider "the likelihood that the award will deter the defendant from like conduct; whether the award is reasonably related to the harm likely to result from such conduct; and the defendant's ability to pay." *Mitchell,* 385 S.C. at 588, 686 S.E.2d at 185.

Here, the jury awarded Jenkins $100,000 in punitive damages and $28,000 in actual damages. The ratio between punitive damages and actual damages is 3.6 to 1. Furthermore, this award of punitive damages will serve to deter Few from engaging in like conduct against Jenkins or other competitors in the fertilizer spreading business. Additionally, the record contains evidence Few has the ability to pay the punitive damages award. Based on the foregoing, we find the award of punitive damages is both reasonable and proportionate to the amount of harm caused.

### C. Comparative Penalty Awards

In conducting a comparative penalty analysis the court should consider the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Mitchell,* 385 S.C. at 588, 686 S.E.2d at 186. To identify comparable cases "a court may consider: the type of harm suffered by the plaintiff or plaintiffs; the reprehensibility of the defendant's conduct; the ratio of actual or potential harm to the punitive damages award; the size of the award; and any other factors the court may deem relevant." *Id.* at 588–89, 686 S.E.2d at 186.

A review of case law uncovered no case factually on point with this one. However, research revealed several comparable cases on the lower end of the single-digit spectrum. In *Mackela v. Bentley,* a conversion case, this court affirmed a punitive to actual damage ratio of 3.7 to 1. 365 S.C. 44, 50, 614 S.E.2d 648, 651 (Ct.App.2005). Also, in *Austin v. Specialty Transportation Services, Inc.,* a negligence case, this court

affirmed a punitive to actual damage ratio of 2.5 to 1. 358 S.C. 298, 318, 594 S.E.2d 867, 877 (Ct.App.2004). This court has also affirmed ratios on the high end of the single-digit spectrum. For instance, in *Collins Entertainment Corp. v. Coats & Coats Rental Amusement*, this court upheld a punitive to actual damage ratio of 9.9 to 1 on an intentional interference with contract claim. 355 S.C. 125, 143–44, 584 S.E.2d 120, 130 (Ct.App.2003). Our review of these cases leads us to the conclusion the 3.6 to 1 ratio at issue here is within the range of comparable cases and those most often upheld by South Carolina courts. *See Mitchell*, 385 S.C. at 593, 686 S.E.2d at 188 ("South Carolina courts have most often upheld verdicts on the low end of the single-digit spectrum . . . .").

After applying the standard articulated in *Mitchell* in our view—especially considering the reprehensibility of Few's conduct and the low single-digit ratio of actual to punitive damages—the jury's award of punitive damages comports with due process.

## CONCLUSION

In sum, Jenkins's claim for civil conspiracy was properly submitted to the jury. However, we find the trial court erred in submitting Jenkins's conversion claim to the jury. Furthermore, the trial court properly declined to exclude Stokes as a witness and did not err in qualifying Stokes as an expert. Because the jury issued a general verdict, we will not speculate as to the amount of damages attributable to each remaining cause of action. Therefore, we affirm the trial court as to the actual damages award. Finally, we find the jury award of punitive damages comports with due process. Accordingly, the decision of the trial court is

**AFFIRMED IN PART AND REVERSED IN PART.**

KONDUROS and GEATHERS, JJ., concur.