**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Prescott & Sons Construction, LLC, Respondent,

v.

Larry Rogers and Michelle Rogers, Appellants.

Appellate Case No. 2015-001115

Appeal From Aiken County
Doyet A. Early, III, Circuit Court Judge

Unpublished Opinion No. 2017-UP-247
Heard May 4, 2017 – Filed June 21, 2017

**AFFIRMED**

M. David Scott, of Jordan, Rauton & Scott, LLC, of
Lexington, for Appellants.

Lir Patrick Derieg, of Columbia, for Respondent.

**PER CURIAM:** In this breach of contract case arising out of renovations to their home, Larry and Michelle Rogers (the Rogers) appeal from a jury verdict in favor of their builder, Prescott & Sons Construction, LLC (Builder). The Rogers assert the trial court erred in (1) denying their judgment notwithstanding the verdict

(JNOV) motion, (2) denying them a new trial, (3) admitting into evidence certain emails sent to them by Builder because the emails were never provided in discovery, and (4) awarding Builder attorney's fees without making sufficient findings of fact. We affirm.

## I.

In 2011, the Rogers approached Josh Prescott, owner of Builder, about additions to their home. In April 2012, the Rogers and Builder executed a contract in which the Rogers agreed to pay Builder's costs plus a 15% fee. The contract stated "Buyers desire that Builder construct an attached garage, sunroom, patio & basement pad on the Lot . . . ."

In May 2012, the parties agreed to a new contract, which recited that "Buyers desire that Builder construct a residence on the Lot . . . ." and "'Residence' shall include the construction of a single-family residence addition of approximately 2300 Square feet of total area as well as porches, deck, and garage . . . ." The contract provided the Rogers would pay all costs of the work, estimated to be $200,000, plus a builder's fee of $25,000, payable as $5,000 per month for five months. If, however, the project lasted less than five months, the remainder of the builder's fee was to be paid upon issuance of the Certificate of Occupancy. If the project exceeded five months, the builder's fee would be reduced to $2,500 per month.

The contract further provided the project cost was only an estimate and did not include costs resulting from "unknown conditions . . . including rock or dirt removal" and changes in scope. The contract also prohibited the Rogers from interfering with or negotiating with Builder's subcontractors.

Josh testified the scope of work of the new contract was "only to do the garage, the porch, do a little patio, and the sunroom." He stated the Rogers deleted the concrete basement pad from the scope of work, yet kept bringing construction of the basement up in conversation. Because adding a basement with several bedrooms and bathrooms would entail a massive excavation of the dirt and support from under the home, Josh advised the Rogers he could not give them a price until they hired an engineer to draw plans. Josh and the Rogers ultimately met with an engineer, who completed a blueprint for the basement construction.

On June 26, 2012, Josh called the landscaper, Jeremy Kelley, and asked him to stop

by so they could review the blueprint and calculate a price for the basement work. Kelley happened to be en route to the Rogers' house. Upon arrival, he told Larry Rogers, "I hear we're back on the basement . . . . Josh has called me for me to go by his office and pick up the new plans." Larry responded that if Josh "didn't do the basement under the current contract he wouldn't be allowed back on the property." Kelley then testified:

> I left [Larry] and went straight to Josh's office. Kind of an odd coincidence but immediately when I walked in Ashley [Josh's wife and office manager] handed me the plans and [Josh's] phone rang. It was Larry. He walked out on the porch. I stayed in with Ashley. And when he c[a]me back in I said something about the plan. He said, well, you can take th[ose] plans and do what you want with them. I just got fired.

Josh gave this version of the events:

> Q: And what did Larry tell you in that phone call?
>
> A: Basically if you think I'm paying you a dime more than what I already agreed to pay you, the $25,000 flat fee, don't come back to my property. You're fired. . . .
>
> Q: What was your response?
>
> A: I said, Larry, there's no way in the world, there's nobody on this earth that would remove all this support from under your house and dig all the dirt out and add you a basement for free. I said, there's no way. And I said, so you're firing me, fine, fire me, but I'm not doing that for free.

Josh claimed that as of June 26, 2012, the project was 50% complete. The framing was finished, the roofing was "99% done," and he had been paid two months of his fee, or $10,000.

Josh also testified the Rogers tried to hire his subcontractors out from under him, and he had sent eight invoices to the Rogers that were not paid. On cross-examination, Josh was asked repeatedly what "proof" he had that he had actually sent the invoices to the Rogers and the Rogers had actually received them.

Phillip Padgett, the framing subcontractor, testified that, when he stopped work, the framing was complete except for punch-list items the city building inspector issued. Padgett said he would have remedied the punch-list at no cost, as Builder had paid him in full for the job. Padgett also stated that, during the project, the Rogers had contacted him directly about prices. The inspector, Brian Stephen Smith, explained the punch-list items and also testified Larry told him Josh was not allowed back on the property to finish the work.

During a break outside the jury's presence, Builder's counsel advised the trial court he was providing the Rogers' counsel with copies of emails that proved Builder had actually sent—and the Rogers had actually received—the unpaid invoices.

When Ashley Prescott testified, the Rogers objected to admission of the emails on the ground they were not produced during discovery. The trial court overruled the objection.

Michelle Rogers testified she and her husband had always contemplated a finished basement and denied they fired Builder. She testified they received the mechanic's lien itemizing the unpaid invoices on July 14, 2012, but did not remember seeing the invoices or receiving them by email.

Larry Rogers stated the basement was within the contracted scope of work. He claimed the contract allowed the work to continue "indefinitely," even if they added an entire wing to their home. He testified he had paid other contractors $36,193.14 to repair Builder's poor work and noted Builder refused his invitation to return to the job. He denied telling Kelley that Builder was not allowed back on the job.

During closing, Builder argued the Rogers breached the contract by (1) conditioning further payment on completion of the basement, which was outside the scope of work, (2) trying to hire Builder's subcontractors from underneath him, and (3) not paying the invoices. He requested damages of $15,000 for the unpaid balance of the builder's fee, and $5,086 for the unpaid invoices.

The Rogers claimed Builder abandoned the project and had given them permission

to communicate with the subcontractors on several occasions. They sought damages of $36,193.14, the amount Larry testified he had paid to complete the work.

The jury found the Rogers breached the contract and awarded Builder $18,166.03 in actual damages. After hearing post-trial motions, the trial court, by written order, denied the Rogers' JNOV and new trial motions and awarded Builder attorney's fees of $10,469.13.

## II.

In considering a motion for a JNOV, the trial judge is concerned with the existence of evidence, not its weight. *Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 320, 585 S.E.2d 272, 274 (2003). Neither an appellate court, nor the trial court, has authority to decide credibility issues or resolve conflicts in evidence. *Id.* The jury's verdict must be upheld unless no evidence reasonably supports the jury's findings, and all facts must be viewed in the light most favorable to the non-moving party. *Id.*

The Rogers contend they should have been granted JNOV because the contract provided Builder could only receive his full fee if a Certificate of Occupancy was issued. Because no Certificate of Occupancy was issued while Builder was on the job, the Rogers claim there was no evidence upon which the jury could award Builder the remaining fee. They further assert the contract gave Builder no right to cure, but merely proved the owner "may" allow the right to cure. Therefore, without a Certificate of Occupancy, they had no contractual duty to pay Builder the full fee.

Builder relies on *Bensch v. Davidson*, which upheld a jury charge that stated, in part, that an owner who "refuses to permit the contractor to complete the work is liable for the contract price less payments made and cannot counterclaim for the amount paid for finishing the building." 354 S.C. 173, 177, 580 S.E.2d 128, 130 (2003). Builder presented evidence showing he was fired after refusing to agree to a substantial escalation of the scope of work without additional compensation. A party to a contract "who prevents a condition of a contract cannot rely on the other party's resulting nonperformance in an action on the contract." *Champion v. Whaley*, 280 S.C. 116, 120, 311 S.E.2d 404, 406 (Ct. App. 1984). The jury had sufficient evidence to find the Rogers prevented Builder's performance by wrongfully expanding the scope of the work. The jury could therefore have found the Rogers prevented Builder from obtaining the Certificate of Occupancy, and the Rogers' conduct excused that as a condition of the contract. *Id.* A reasonable jury could have easily found the Rogers' hyper-technical interpretation of the contract was at

odds with the parties' mutual intent as expressed in the contract's terms.

## III.

The Rogers claim they are entitled to a new trial because the jury's verdict was against the weight of the evidence and its amount so inscrutable as to be unsupported by the record. A trial court's denial of a new trial will not be disturbed on appeal unless its findings are wholly unsupported by the evidence or controlled by error of law. *Vinson v. Hartley*, 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct. App. 1996). Reviewing the testimony and reasonable inferences therefrom in the light most favorable to Builder, as we are required to do, abundant evidence shows the Rogers breached the contract by preventing Builder's performance, interfering with its subcontractors, and refusing to pay invoices. The jury was charged properly on the elements of breach of contract, the doctrine of prevention of performance, and the measure of damages.

The verdict of $18,166.03 was within the range of the evidence, as Builder claimed $5,086 in unpaid invoices and $15,000 in unpaid fees.

## IV.

The Rogers next contend the trial court failed to support its attorney's fee award with adequate factual findings. An award of attorney's fees will be affirmed if the findings of fact are supported by *any* competent evidence. *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993). While acknowledging the trial court's order tracked the appropriate factors from *Baron Data Systems, Inc. v. Loter*, 297 S.C. 382, 377 S.E.2d 296 (1989), they complain the trial court merely deemed each factor "reasonable" and failed to conduct a sufficient analysis. They further note there is no transcript of the attorney's fee hearing, and the fee affidavit of Builder's counsel is not referenced in the order.

The Rogers' position is overbearing. While Judge Early's factual findings underpinning the award are not elaborate, he presided over the case and was quite familiar with its nature. He also noted the fees awarded to Builder were less than those sought by the Rogers. He did not just list the factors, but made factual findings as to each one that enjoy ample support in the record. It is not legal error to be succinct. *Cf. Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 123–24 (1991) (holding Rule 52(a)'s requirement that in a bench trial the trial court shall "find the facts specially" to be a "directory" requirement; where the trial court substantially

complies with Rule 52(a), SCRCP, and adequately states the basis for its result, "the appellate court should not vacate the trial court's judgment for lack of an explicit or specific factual finding").

**V.**

Finally, the Rogers argue the trial court erred in admitting the emails because they were not disclosed during discovery. Accordingly, they contend the court erred by not making findings on the record pursuant to *Jamison v. Ford Motor Co.*, 373 S.C. 248, 270, 644 S.E.2d 755, 767 (Ct. App. 2007), and they were prejudiced because the emails were the only proof of actual receipt of the invoices. The Rogers further contend the emails were within the ambit of their discovery requests, and they had been forced to file a motion to compel before trial. They concede, as they must, that the motion was resolved before trial.

*Jamison* involved a motion for discovery sanctions, not admission of evidence at trial. *Id.* The closest fit is *Bensch*, and *Jumper v. Hawkins*, 348 S.C. 142, 149–50, 558 S.E.2d 911, 915 (Ct. App. 2001), which require a trial court to make the following findings when deciding whether to exclude a witness: (1) the type of witness involved, (2) the content of the evidence, (3) the explanation for the failure to name the witness in the answer to the interrogatory, (4) the importance of the witness's testimony, and (5) the degree of surprise to the other party. *Bensch*, 354 S.C. at 182, 580 S.E.2d at 133. Here of course we are dealing with an exhibit rather than a witness, but Rule 33(b), SCRCP, and the continuing duty to disclose are still in play.

Evidentiary rulings are within the sound discretion of the trial court and warrant reversal only if the Rogers prove both error and prejudice. *Conner v. City of Forest Acres*, 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005). We find the Rogers cannot demonstrate prejudice, which requires proof of a reasonable probability that the jury's verdict was influenced by the challenged evidence. *Id.* First, the subcontractors and their unpaid invoice amounts were listed on the mechanic's lien served on the Rogers in July 2012, some two-and-a-half years before the trial. Second, the emails were not the "only" evidence of receipt of the invoices: both Josh and his wife testified they emailed them to the Rogers. Third, it was the Rogers— and not Builder—who made "actual receipt" of the emails an issue. It is at best awkward for the Rogers to feign unfair surprise when proof of receipt emerged. One who falls into his own trap cannot cry ambush.

Nothing in the record explains how additional time would have enhanced the Rogers' ability to counter proof of their own emails or demonstrates any other concrete prejudice.

## VI.

The trial was conducted fairly and expertly, and the verdict was consistent with the evidence.  The trial court committed no error in its award of attorney's fees or admission of the disputed emails.  The judgment is therefore

**AFFIRMED.**

**GEATHERS, MCDONALD, and HILL, JJ., concur.**