## 20182

ATKINSON DREDGING COMPANY, Appellant, v. W. O. THOMAS, Jr., as Treasurer of Charleston County, Respondent.

(223 S. E. (2d) 592)

*Messrs. Young, Clement & Rivers,* of Charleston, *for Appellant,*

*Messrs. Furman, Jenkins & Buist,* of North Charleston, *Augustine T. Smythe,* of *Buist, Moore, Smythe & McGee,* Charleston, *Daniel R. McLeod, Atty. Gen.,* and *Joe L. Allen, Jr., Dep. Atty. Gen.,* of Columbia, *for Respondent,*

March 9, 1976.

RHODES, Justice.

This is an action under S. C. Code § 65-2662 (1962) in which plaintiff - appellant, Atkinson Dredging Company, seeks to recover from the Treasurer of Charleston County, defendant-respondent W. O. Thomas, *ad valorem* business personal property taxes paid by it under protest for the year 1971. Atkinson contends that the taxes should have been apportioned because its property was physically present within the County for only a portion of the year. Atkinson also contends that the Treasurer is estopped from re-litigating the question of whether the 1971 taxes should be apportioned by virtue of an earlier decree obtained by it providing that its 1970 taxes must be apportioned. The lower court held that no apportionment was required and that the Treasurer was not estopped. We affirm.

Atkinson is a corporation organized and existing under the laws of the State of Florida, and maintains its principal place of business in Chesapeake, Virginia. Its principal business consists of dredging navigable waterways along the East Coast of the United States. On September 8, 1970, pursuant to a contract with the United States Army Corps of Engineers to perform certain dredging operations in Charleston Harbor in aid of navigation, Atkinson brought various items of marine and dredging equipment into Charleston County. Work was commenced on September 11, 1970, and completed on February 5, 1971.

Because Atkinson's dredge and related equipment were physically located in Charleston County on December 31, 1970, the assessment date for the 1971 tax year,[1] the County assessed Atkinson's equipment and demanded that an *ad valorem* non-apportioned business personal property tax be paid it by Atkinson. The tax was paid under protest and after exhausting administrative remedies, Atkinson brought this suit contending that the imposition of the non-apportioned tax was violative of the due process provisions of both the State and Federal Constitutions.[2] Atkinson further contends that the disposition of the present suit is controlled by an earlier ruling in a case involving the 1970 tax year between the same parties under the principle of estoppel by judgment. The two questions here involved will be treated in the order stated.

## WAS THERE A DENIAL OF THE CONSTITUTIONAL GUARANTEE OF DUE PROCESS BY THE NON-APPORTIONED TAXATION OF ATKINSON'S PROPERTY FOR THE 1971 TAX YEAR?

In its dredging operations Atkinson used seven items of equipment. The County Tax Assessor placed a total value of $262,000.00 on the property and levied the following taxes for the year 1971:

|  | 1971 Assessment | 1971 Tax Due |
|---|---|---|
| Barge with crane | $ 1,650.00 | $ 318.45 |
| Tug (pusher) | 1,100.00 | 212.30 |
| Barge | 1,430.00 | 275.99 |
| Tug (pusher) | 1,100.00 | 212.30 |
| Tug (pusher) | 1,100.00 | 212.30 |
| Crew Boat | 440.00 | 84.92 |
| Dredge (Hampton Roads) | 22,000.00 | 4,246.00 |
|  | $28,820.00 | $5,562.26 |

[1] See S. C. Code § 65-1644 (1962).
[2] Art. I, § 3 of the S. C. Constitution; Fourteenth Amendment of the U. S. Constitution.

Atkinson has stipulated that the above-described property attained tax situs in Charleston County so as to subject it to taxation, but it contends that because the property was present in Charleston County for only a portion of the tax year, the tax should be apportioned. It was further stipulated that Atkinson paid non-apportioned taxes on a substantial portion of the equipment to the City of Chesapeake, Virginia for the year 1971. Atkinson does not contend its property was engaged in interstate commerce during the period it was located in Charleston Harbor, and does not rely on the commerce clause of the United States Constitution. It only contends that due process requires apportionment in the instant case. Thus, we are here concerned with property engaged in a local activity, and the fact Atkinson was domiciled in a state other than South Carolina has only incidental relevancy.

There is no statute in this State authorizing the apportionment of *ad valorem* taxes levied on personal property. Consequently, we are of the opinion that if the tax levied on Atkinson's equipment could not be constitutionally levied on a non-apportionment basis, it must fail. We are unaware of any case in which the Court has attempted to remedy a defect in the taxing statute by ordering an apportionment.

Therefore, the issue before us is whether the assessment of the non-apportioned personal property tax on Atkinson's property by the County complied with the requirements of due process. The leading case in this area of law is that of *State of Wisconsin v. J. C. Penney Co.*, 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267 (1940), from which the following is quoted:

"A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.

\* \* \*

"The test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return." 311 U. S. at 444, 61 S. Ct. at 249.

Penney was concerned with a tax on the J. C. Penney Co. levied by the State of Wisconsin on the payment of dividends insofar as they were attributable to business in Wisconsin. The Supreme Court of the United States held the tax to be a deferred income tax and it was sustained. The State of South Carolina has for many years recognized it must fairly apportion the income tax which it levies on a corporation doing business in South Carolina and in other states. Article V of Chapter 5 of the 1962 Code, which embraces Sections 65-279 through 65-279.11, provides for the allocation or apportionment of income attributable to multistate activities.

While Penney was not concerned with a tax on tangible personal property which had acquired a tax situs and was engaged in an intrastate activity, we deem it controlling only as to the standard to be applied in determining whether the requirements of due process have been met in the instant case. We consider, therefore, whether the factual situation here presented is such as to comply with the test for due process laid down in *Penney* or, more to the point, whether Charleston County has "given anything for which it can ask return."

Atkinson has cited to us several cases from both Federal and State jurisdictions which have applied the Penney due process test to the imposition of an *ad valorem* personal property tax by the domiciliary and non-domiciliary states upon property engaged in interstate commerce. These cases require the apportionment of such taxes where the property is physically present within more than one taxing authority

during the tax year. Most of these cases were examined in *Billings Transfer Corp., Inc. v. County of Davidson,* 276 N. C. 19, 170 S. E. (2d) 873 (1969). The following are but representative of this line of cases, adjacent to each of which is parenthetically stated the item of property on which the tax was imposed: *Ott v. Mississippi Valley Barge Line Company,* 336 U. S. 169, 69 S. Ct. 432, 93 L. Ed. 585 (1949) (tugs and barges); *Braniff Airways, Inc. v. Nebraska State Board of Eq. & A.,* 347 U. S. 590, 74 S. Ct. 757, 98 L. Ed. 967 (1954) (aircraft); *Slick Airways v. County of Los Angeles,* 140 Cal. App. (2d) 311, 295 P. (2d) 46 (1956) (aircraft); *Flying Tiger Line v. County of Los Angeles,* 51 Cal. (2d) 314, 333 P. (2d) 323 (1958) (aircraft).

These cases, however, are readily distinguishable from the instant case in that the items sought to be taxed consisted of equipment which were *per se* engaged in interstate commerce. As previously stated, Atkinson does not contend any of its property was engaged in interstate commerce during the period its equipment was in the County. There is no mandate from any case to which we have been cited, analogous to the factual situation here presented, which imposes as a requirement of due process that the benefits shall be received from the taxing authority over the entirety of the period for which the tax is levied. The United States Supreme Court in the case of *Gromer v. Standard Dredging Co.,* 224 U. S. 362, 32 S. Ct. 499, 56 L. Ed. 801 (1912), (which also involved the taxation of a dredge and related equipment) stated:

"If Puerto Rico had jurisdiction over the harbor area, it had jurisdiction to tax property which was situated in the harbor, no matter how engaged; and, being so situated, *the validity of the tax upon it cannot be determined by an inquiry of the extent it may be benefited.*" (Emphasis added).

There are many cases, both State and Federal, which hold that taxes, otherwise lawful, are not invalidated by reason of the fact that the resulting benefits are

unequally shared. It is evident from the record that Charleston County has given to Atkinson something for which it can ask return. It has been stipulated that opportunities, benefits and protections of Charleston County and the State of South Carolina were conferred upon or afforded to Atkinson during the period that it was dredging in Charleston Harbor. We take judicial notice that these benefits included police and fire protection, medical, recreational, educational and marine facilities. It was held in *Dane v. Jackson*, 256 U. S. 589, 41 S. Ct. 566, 65 L. Ed. 1107 (1921), that a tax will be held to violate due process "only where it proposes or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation." *Accord, Sanders v. Greater Greenville Sewer Dist.,* 211 S. C. 141, 44 S. E. (2d) 185 (1947).

The West Virginia Supreme Court of Appeals in *George F. Hazelwood Company v. Pitsenbarger,* 149 W. Va. 485, 141 S. E. (2d) 314 (1965), app. dism., 382 U. S. 201, 86 S. Ct. 392, 15 L. Ed. (2d) 268 (1965) (want of a substantial federal question), was presented a case strikingly analogous to the case before us. A contractor, domiciled in Maryland, moved heavy equipment into West Virginia during 1960 and used the same in construction work until it was removed from the State in December of 1961. The 1961 tax was assessed as of December 31, 1960 and was paid without protest. The West Virginia Legislature changed the tax assessment date from December 31 to July 31, and the tax for 1962 was assessed on the equipment located in the State on July 31, 1961. A non-apportioned tax for 1962 was levied on the contractor's equipment despite the fact that it was never physically within West Virginia during the calendar year 1962, and Maryland had also levied a tax on the equipment for the year 1962. We quote from the opinion upholding the West Virginia tax:

"Although the personal property of the Hazelwood Company has been taxed by both West Virginia and Maryland for the same year, there is no constitutional inhibition against such taxation. Generally, to constitute double taxation there must be an identity of taxing authority, taxing period, taxing purpose, and person and property taxed; and even then there are exceptions resulting from constitutional provisions not necessary to discuss here. 51 Am. Jur., Taxation, Sections 284, 285. Many constitutions do not prohibit *per se* double taxation, and cases striking it down have generally relied on 'equal and uniform' clauses.

"The State of Maryland had the power to tax the property in question because it was located within its jurisdiction at the domicile of the owner on January 1, 1962, at which time such property was apparently assessed for taxation. West Virginia had the power to tax the same property because it was located in West Virginia on July 1, 1961, which was the time the Legislature had fixed to determine a tax situs in West Virginia for 1962 taxes and had provided that the tax upon such property shall be paid by the owners thereof for property located in West Virginia on July 1, 1961. Code, 11-3-1, as amended."

While there is some appeal to Atkinson's argument that its taxes should be apportioned on the basis of the time its dredge and other equipment were physically in the County during 1971, such an argument is available to many citizens of this and other states as illustrated by the following example contained in the lower court's order:

"If a Charleston taxpayer had bought an automobile on Christmas Day, 1974, and that automobile had been totally destroyed on New Year's Day, he would, none the less, be liable to pay property tax for the entire year 1975. On the other hand, if he had bought an automobile on January 2, 1975, he would owe no personal property tax on that for the year 1975. In an ideal state, it would probably be well to levy the personal property tax on a daily basis. However,

this would be an administrative impossibility. Under our taxing system, there have always been inequalities and inequities resulting from the fact that the tax for an entire year is contingent under Sec. 65-1644 on possession or control on the 31st day of December next preceding the tax year in question."

> ■ We hold that due process was not violated by reason of the fact that Atkinson's personal property taxes for 1971 were not apportioned.

IS THE COUNTY OF CHARLESTON ESTOPPED FROM TAXING ATKINSON'S PROPERTY ON A NON-APPORTIONED BASIS FOR THE 1971 TAX YEAR BECAUSE OF A PRIOR ORDER OF THE COURT OF COMMON PLEAS THAT PROVIDED FOR SUCH APPORTIONMENT FOR THE 1970 TAX YEAR?

Atkinson, pursuant to a contract with the U. S. Army Corps of Engineers, brought the dredge Enterprise and other related equipment to Charleston Harbor in August of 1969, removing them on January 2, 1970. Having been present on December 31, 1969, the property was assessed and taxed for the year 1970. The taxes were paid under protest and an action brought by Atkinson to recover same. The suit was heard by the Resident Judge of the Ninth Judicial Circuit on a stipulation of facts and by his order of May 8, 1974, he held that the equipment had tax situs in Charleston County but he likewise held that it could be taxed only on an apportioned basis. This order was not appealed from and Atkinson contends that it effected an estoppel by judgment under *Mackey v. Frazier,* 234 S. C. 81, 106 S. E. (2d) 895 (1959), which precluded the Treasurer from successfully contending in the instant case that Charleston County was entitled to collect the personal property tax for 1971 on a non-apportioned basis. While the Treasurer contends that such doctrine is not applicable here by reason of the fact that two distinct tax years are involved, a different

dredge was involved, and there exists some differences in the stipulation of facts on which the cases were submitted, we decide this issue on policy grounds.

In *Henricksen v. Seward,* 135 F. (2d) 986 (9th Cir. 1943), the Court of Appeals for the Ninth Circuit had occasion to consider the application of the doctrine of estoppel by judgment as a limitation on the taxing authority. In that case the District Court had applied the doctrine and the Court of Appeals reversed. The following quote is taken from the opinion:

"From these varying decisions of the court of last resort we conclude that the rule, as applied in tax litigation, is sufficiently elastic to permit of the balancing of conveniences and the weighing of other considerations as against that of desired repose. . . . Thus in tax controversies of this character, when courts undertake to bestow on either party a vested right in an erroneous decision of law, they are apt, by multiplying the issues, merely to add fuel to the controversy." *Accord,* Restatement, Judgments, § 70 and comment f.

We are of the opinion that the principle of estoppel by judgment should be sparingly applied where the taxing power of the State or its subdivisions is involved, and we decline to apply it in this case.

AFFIRMED.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.