796 S.E.2d 165

Frank R. MEAD, III, Respondent,

v.

BEAUFORT COUNTY ASSESSOR, Appellant.

Appellate Case No. 2014-002355
Opinion No. 5460

Court of Appeals of South Carolina.

Heard April 13, 2016
Filed December 21, 2016
Rehearing Denied February 23, 2017

126

Stephen P. Hughes and James Andrew Yoho, both of Howell Gibson & Hughes, PA, of Beaufort, for Appellant.

Burnet Rhett Maybank, III and James Peter Rourke, both of Nexsen Pruet, LLC, of Columbia, for Respondent.

KONDUROS, J.:

In this appeal from the administrative law court (ALC), the Beaufort County Assessor appeals the ALC's reversal of the Assessor's determination Frank Mead, III was not eligible for the homestead exemption in 2011 because for over fourteen days that year he rented out the home he owned. The Assessor contends the ALC erred in finding the primary residence classification and homestead exemption are unrelated. We affirm as modified.

**FACTS/PROCEDURAL HISTORY**

Mead was born in 1939 and turned sixty-five years old in 2004. Mead owns one home, which is located on Hilton Head Island, South Carolina. He purchased the home in 1976. From 2005 to 2010, he received the homestead exemption on his property. In 2011, he rented his home out for at least one hundred thirty-eight days. While his home was being rented, he traveled or stayed in an apartment for which he paid rent.

The Assessor revoked Mead's homestead exemption for the 2011 tax year because she believed his property no longer qualified for it as a result of his renting out his home for more than fourteen days. Mead appealed the determination to the Beaufort County Tax Equalization Board. Following a conference with both parties' attorneys, the Board denied Mead's relief by letter.

Mead requested a contested case hearing before the ALC. Both parties filed motions for summary judgment, agreeing the sole issue was whether the homestead exemption under section 12-37-250 of the South Carolina Code is available only to property that also qualifies for the preferential residential assessment ratio in section 12-43-220(c) of the South Carolina Code.

Following a hearing, the ALC issued an order granting Mead's motion for summary judgment, finding Mead had met the requirements for the homestead exemption. The ALC determined Mead had been a resident of South Carolina for at least one year, was over the age of sixty-five, was granted the homestead exemption in 2005, and had not done anything that would amount to a change affecting eligibility. The ALC further found the homestead exemption applies to a person's dwelling place and despite Mead's practice of renting out his house and living in a rented apartment, he does not hold out any other property as his primary residence and thus, the subject property is his dwelling place. Additionally, the ALC determined the homestead exemption and the primary residence classification are "two ships in the night" because the two classifications relate to different constitutional provisions, statutes, requirements, incentives, and types of qualifying properties. The ALC further found the fourteen-day rental rule does not apply to the homestead exemption. Accordingly, the ALC granted Mead's motion for summary judgment, finding he was entitled to the homestead exemption for 2011 and subsequent years.

The Assessor filed a motion for reconsideration. The ALC did not rule on the motion, and the Assessor considered the motion to be denied after thirty days pursuant to South Carolina Administrative Law Court Rules. This appeal followed.

## STANDARD OF REVIEW

■ "[T]he South Carolina Rules of Civil Procedure may be applied in proceedings before the ALC to resolve questions not addressed by the ALC rules." *Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 144, 694 S.E.2d 525, 527–28 (2010) (citing Rule 68, SCALCR). The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

██ "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006). "[C]ross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, 399 S.C. 313, 319 n.2, 731 S.E.2d 869, 872 n.2 (2012) (alteration by court) (quoting *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)). "Where cross motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law." *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011). "The question of statutory interpretation is one of law for the court to decide." *Alltel Commc'ns, Inc.*, 399 S.C. at 316, 731 S.E.2d at 870. "The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008).

## I. Chapter 37

██ The Assessor argues the ALC erred in determining Chapter 37 is the sole determinant of homestead exemption availability and failed to acknowledge section 12-43-220(c) imposes an additional requirement for qualification of the homestead exemption. She also asserts the ALC erred in its interpretation of section 12-37-252. She contends there is not a separate 4% assessment ratio for the homestead exemption; the only 4% assessment ratio is provided by section 12-43-220(c). Additionally, the Assessor maintains the ALC erred in finding the 4% assessment under section 12-37-252 is separate from the 4% assessment under 12-43-220(c) because only one 4% assessment is authorized by the South Carolina Constitution.[1] We disagree.

---

1. This section incorporates several of the Assessor's arguments that are essentially the same issue.

(A) Pursuant to the provisions of [s]ection 3, [a]rticle X of the [s]tate [c]onstitution and subject to the provisions of [s]ection 12-4-720, there is exempt from ad valorem taxation:

. . .

(9) a homestead exemption for persons sixty-five years of age and older, for persons permanently and totally disabled and for blind persons in an amount to be determined by the General Assembly of the fair market value of the homestead under conditions prescribed by the General Assembly by general law. . . .

S.C. Code Ann. § 12-37-220(A) (2014); *see also* S.C. Const. art. X, § 3 ("There shall be exempt from ad valorem taxation . . . (i) a homestead exemption for persons sixty-five years of age and older, for persons permanently and totally disabled and for blind persons in the amount of ten thousand dollars of the fair market value of the homestead under conditions prescribed by the General Assembly by general law; *provided,* that the amount may be increased by the General Assembly by general law, passed by a majority vote of both houses. . . .").

The first fifty thousand dollars of the fair market value of the dwelling place of a person is exempt from county, municipal, school, and special assessment real estate property taxes when the person:

(i) has been a resident of this [s]tate for at least one year and has reached the age of sixty-five years on or before December thirty-first;

. . . .

S.C. Code Ann. § 12-37-250(A)(1) (2014). " 'Dwelling place' means the permanent home and legal residence of the applicant." S.C. Code Ann. § 12-37-250(A)(5) (2014).

"The homestead exemption initially granted pursuant to [s]ection 12-37-250 continues to be effective for successive years in which the ownership of the homestead or the other qualifications for the exemption remain unchanged." S.C. Code Ann. § 12-37-255(A) (2014). "Notwithstanding any other provision of law, property that qualifies for the homestead exemption pursuant to [s]ection 12-37-250 is classified and taxed as residential on an assessment equal to four percent of the property's fair market value." S.C. Code Ann. § 12-37-252(A) (2014).

When a person qualifies for a refund pursuant to [s]ections 12-60-2560 and 12-43-220(c) for prior years' eligibility for the four percent owner-occupied residential assessment ratio, the person also may be certified for a homestead tax exemption pursuant to [s]ection 12-37-250. This refund does not extend beyond the immediate preceding tax year. The refund is an exception to the limitations imposed by [s]ection 12-60-1750.

S.C. Code Ann. § 12-37-252(B) (2014).

The version of section 12-43-220(c) in effect for the 2011 assessment provided:

The legal residence and not more than five acres contiguous thereto, when owned totally or in part in fee or by life estate and occupied by the owner of the interest, ... are taxed on an assessment equal to four percent of the fair market value of the property. If residential real property is held in trust and the income beneficiary of the trust occupies the property as a residence, then the assessment ratio allowed by this item applies if the trustee certifies to the assessor that the property is occupied as a residence by the income beneficiary of the trust. When the legal residence is located on leased or rented property and the residence is owned and occupied by the owner of a residence on leased property, even though at the end of the lease period the lessor becomes the owner of the residence, the assessment for the residence is at the same ratio as provided in this item. If the lessee of property upon which he has located his legal residence is liable for taxes on the leased property, then the property upon which he is liable for taxes, not to exceed five acres contiguous to his legal residence, must be assessed at the same ratio provided in this item. If this property has located on it any rented mobile homes or residences which are rented or any business for profit, this four percent value does not apply to those businesses or rental properties. For purposes of the assessment ratio allowed pursuant to this item, a residence does not qualify as a legal residence unless the residence is determined to be the domicile of the owner-applicant.

S.C. Code Ann. § 12-43-220(c)(1) (Supp. 2010).

To qualify for the special property tax assessment ratio allowed by this item, the owner-occupant must have actually

owned and occupied the residence as his legal residence and been domiciled at that address for some period during the applicable tax year. A residence which has been qualified as a legal residence for any part of the year is entitled to the four percent assessment ratio provided in this item for the entire year, for the exemption from property taxes levied for school operations pursuant to [s]ection 12-37-251 for the entire year, and for the homestead exemption under [s]ection 12-37-250, if otherwise eligible, for the entire year.

S.C. Code Ann. § 12-43-220(c)(2)(i) (Supp. 2015).

Notwithstanding any other provision of law, the owner-occupant of a legal residence is not disqualified from receiving the four percent assessment ratio allowed by this *item*, if the taxpayer's residence meets the requirements of Internal Revenue Code Section 280A(g)[2] as defined in [s]ection 12-6-40(A) and the taxpayer otherwise is eligible to receive the four percent assessment ratio.

S.C. Code Ann. § 12-43-220(c)(7) (Supp. 2010) (emphasis added), *repealed by* 2014 S.C. Acts 259, § 1.B.

*Black's Law Dictionary* defines the term "item" as "[i]n drafting, a subpart of text that is the next smaller unit than a subparagraph" and also as "[a] piece of a whole, not necessarily separated." Item, *Black's Law Dictionary* (10th ed. 2014).

"A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." *Lockwood Greene Eng'rs, Inc. v. S.C. Tax Comm'n*, 293 S.C. 447, 449, 361 S.E.2d 346, 347 (Ct. App. 1987). "Words in a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's application." *Epstein*

---

**2.** Section 280A(g) of the Internal Revenue Code provides:

Special rule for certain rental use.—Notwithstanding any other provision of this section . . ., if a dwelling unit is used during the taxable year by the taxpayer as a residence and such dwelling unit is actually rented for less than 15 days during the taxable year, then—

(1) no deduction otherwise allowable under this chapter because of the rental use of such dwelling unit shall be allowed, and

(2) the income derived from such use for the taxable year shall not be included in the gross income of such taxpayer under section 61.

*Ford v. Beaufort Cty. Assessor*, 398 S.C. 508, 514–15, 730 S.E.2d 335, 339 (Ct. App. 2012) (alteration by court) (quoting I.R.C. § 280A(g)).

*v. Coastal Timber Co.*, 393 S.C. 276, 285, 711 S.E.2d 912, 917 (2011). "Where the language of [a] statute is plain and unambiguous ... the court has no right to look for or impose another meaning." *Clarendon Cty. ex rel. Clarendon Cty. Assessor v. TYKAT, Inc.*, 394 S.C. 21, 25, 714 S.E.2d 305, 307 (2011) (alterations by court) (quoting *Wynn ex rel. Wynn v. Doe*, 255 S.C. 509, 512, 180 S.E.2d 95, 96 (1971)). "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007)).

"However, 'the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect.'" *Id.* (quoting *S.C. State Ports Auth. v. Jasper Cty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)). "We therefore should not concentrate on isolated phrases within the statute." *Id.* "Instead, we read the statute as a whole and in a manner consonant and in harmony with its purpose." *Id.* "[W]e must read the statute so 'that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous,' for '[t]he General Assembly obviously intended [the statute] to have some efficacy, or the legislature would not have enacted it into law.'" *Id.* (second and third alterations by court) (quoting *State v. Sweat*, 379 S.C. 367, 377, 382, 665 S.E.2d 645, 651, 654 (Ct. App. 2008), *aff'd*, 386 S.C. 339, 688 S.E.2d 569 (2010)).

"[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (alteration by court) (quoting *Dunton v. S.C. Bd. of Exam'rs in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987)). The Department of Revenue (the Department) is "the agency charged with administering this State's revenue laws." *CFRE, LLC*, 395 S.C. at 77, 716 S.E.2d at 882.

In 1997, the Department issued a ruling determining

(1) because property that qualifies for the homestead exemption is classified and taxed as residential on an assess-

ment equal to four percent of the property's fair market value—see ... [s]ection 12-37-252(A); and (2) because a person who qualifies for a refund for prior years' eligibility for the four percent owner-occupied residential assessment ratio may also be certified for a homestead tax exemption— see ... [s]ection 12-37-252(B), that the ownership and occupancy requirements for the homestead exemption and for the 4% legal residence assessment ratio are the same. SCDOR Rev. Ruling 97–18. However, two years later, the Department withdrew that ruling. *See* SCDOR Inform. Letter 99-4 ("SC Revenue Ruling # 97–18 is hereby withdrawn.").

Nothing in the statutes providing the requirements for eligibility for the homestead exemption make reference to the primary residence classification. Section 12-37-252(A) specifically states, "Notwithstanding any other provision of law, property that qualifies for the homestead exemption pursuant to [s]ection 12-37-250 is classified and taxed as a residential assessment equal to four percent. . . ." The plain and ordinary language indicates despite what any other provision of law says, property is taxed at a rate of 4% if the owner meets the requirements of 12-37-250. Those requirements are the property must be "the dwelling place of a person" who "(i) has been a resident of this State for at least one year and has reached the age of sixty-five years on or before December thirty-first; (ii) has been classified as totally and permanently disabled by a state or federal agency . . .; or (iii) is legally blind." Without dispute, Mead meets the requirements of subsection (A)(i). The Assessor's basis for her argument is the requirements from the primary residence classifications statutes also must be met for a person to be entitled to the homestead exemption. However, the clear language of the homestead exemption statutes states otherwise.

Section 12-43-220(c)(7)'s requirement the taxpayer's residence must comply with Internal Revenue Code Section 280A(g)—that the property cannot be rented for more than fourteen days—only applies to the four percent assessment ratio allowed by that *item*. This would not include the homestead exemption because that item, which by definition is smaller than a subparagraph, only deals with the primary residence assessment ratio. The homestead exemption is found in another chapter entirely.

Further, if we were to accept the Assessor's references to the 4% assessment ratio in the statutes providing for the homestead exemption would be superfluous, and we are to assume the Legislature would not enact such a statute. *CFRE, LLC*, 395 S.C. at 74, 716 S.E.2d at 881 ("[W]e must read the statute so 'that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous,' for '[t]he General Assembly obviously intended [the statute] to have some efficacy, or the legislature would not have enacted it into law.'" (second and third alterations by court) (quoting *Sweat*, 379 S.C. at 377, 382, 665 S.E.2d at 651, 654)).

Additionally, the Department—the agency charged with administering our state's tax laws—once took the same view as the Assessor but withdrew that position just a few years later. *See* SCDOR Inform. Letter 99-4. Accordingly, the ALC correctly found Chapter 37 is the sole determination of homestead exemption availability. Therefore, we affirm the ALC's decision.

## II. Fourteen-Day Rule

The Assessor argues the ALC erred by failing to apply the fourteen-day rule, as clarified by this court in *Ford*. We disagree.

*Ford* concerned homeowners who became ineligible for a 4% tax assessment on their home after renting their home out for over fourteen days in one year.[3] 398 S.C. at 510, 730 S.E.2d at 336-37. That case contained no mention of Chapter 37 or the homestead exemption. As stated by this court in that case, "The primary focus of this appeal is section 12-43-220(c) of the South Carolina Code (Supp. 2011), which governs the eligibility of a legal residence to be taxed on an assessment ratio equal to four percent of the fair market value of the property." *Id.* at 511, 730 S.E.2d at 337 (footnote omitted).

The fourteen-day rule as provided by *Ford* derives from section 12-43-220(c). As stated above, the homestead exemption requirements are found in Chapter 37, not in Chapter 43.

---

**3.** In 2014, section 12-43-220(c)(2)(iv) of the South Carolina Code was amended to increase the number of days triggering the loss of the 4% assessment from more than fourteen to more than seventy-two. *See* 2014 S.C. Act 259, § 1.A, B.

Accordingly, the language in section 12-43-220(c) does not apply to the homestead exemption. Chapter 37 does not contain any parallel language to the specific language that creates the fourteen-day rule in Chapter 43. Because all the requirements for the homestead exemption are in Chapter 37 and it does not provide any limitations on renting the primary residence, the ALC correctly found the fourteen-day rule clarified by *Ford* does not apply.

## III. Proration

■ The Assessor maintains the ALC erred in determining section 12-43-220(c)(2) is solely a proration statute and failed to consider the statute's broader purpose. We disagree.

Section 12-43-220(c)(2)(i) provides:

To qualify for the special property tax assessment ratio allowed by this item, the owner-occupant must have actually owned and occupied the residence as his legal residence and been domiciled at that address for some period during the applicable tax year. A residence which has been qualified as a legal residence for any part of the year is entitled to the four percent assessment ratio provided in this item for the entire year, for the exemption from property taxes levied for school operations pursuant to [s]ection 12-37-251 for the entire year, and for the homestead exemption under [s]ection 12-37-250, if otherwise eligible, for the entire year.

Prorate is defined as "[t]o divide or distribute proportionately; to assess ratably." Prorate, *Black's Law Dictionary* (10th ed. 2014). "There is no statute in this State authorizing the apportionment of ad valorem taxes levied on personal property." *Atkinson Dredging Co. v. Thomas*, 266 S.C. 361, 365, 223 S.E.2d 592, 594 (1976). Apportionment is defined as "[t]he act of allocating or attributing moneys or expenses in a given way." Apportionment, *Black's Law Dictionary* (10th ed. 2014).

The Assessor relies on the same arguments made above to show why section 12-43-220(c)(2) is not solely a proration statute; that Chapters 37 and 43 must be read together because they are inextricably linked. As explained above, this is not the case. Therefore, the ALC's finding was not in error.

## IV. Public Policy

 The Assessor asserts the ALC's order violated public policy. We find this issue abandoned. "An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority." *Bryson v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct. App. 2008). "[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review." *Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001). When an appellant provides no legal authority regarding a particular argument, the argument is abandoned and the court can decline to address the merits of the issue. *State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct. App. 2011). The Assessor provided no case law on the issue, particularly no case law or other authority on public policy and what constitutes a violation of it. Accordingly, this issue is abandoned.

## V. Construction of Ambiguities

 The Assessor maintains the ALC erred in failing to construe ambiguities in the relevant statutes in her favor. We disagree.

Generally, a court must apply the rules of statutory interpretation to resolve the ambiguity and discover the intent of the legislature. *Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001). However, "[i]n the enforcement of tax statutes, the taxpayer should receive the benefit in cases of doubt." *S.C. Nat'l Bank v. S.C. Tax Comm'n*, 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989) (citing *Cooper River Bridge, Inc. v. S.C. Tax Comm'n*, 182 S.C. 72, 188 S.E. 508 (1936)). "[W]here the language relied upon to bring a particular person within a tax law is ambiguous or is reasonably susceptible of an interpretation that will exclude such person, then the person will be excluded, any substantial doubt being resolved in his favor." *Cooper River Bridge, Inc.*, 182 S.C. at 76, 188 S.E. at 509–10; *see also SCANA Corp. v. S.C. Dep't of Revenue*, 384 S.C. 388, 394 n.3, 683 S.E.2d 468, 471 n.3 (2009) (Beatty, J., dissenting) (noting general rule that where substantial doubt exists as to the construction of tax statutes, the doubt must be resolved against the government).

*Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, 399 S.C. 313, 321, 731 S.E.2d 869, 873 (2012) (alterations by court).

In conjunction with these rules of statutory construction, we must also be cognizant of our policy to strictly construe a tax credit against the taxpayer as it is a matter of legislative grace. *See CFRE*, 395 S.C. at 74, 716 S.E.2d at 881 ("[I]nterlaced with these standard canons of statutory construction is our policy of strictly construing tax exemption statutes against the taxpayer."); *SCANA Corp. v. S.C. Dep't of Revenue*, 384 S.C. 388, 394, 683 S.E.2d 468, 471 (2009) (recognizing that a tax credit is analogous to a tax deduction and, thus, is strictly construed against the taxpayer (Beatty, J., dissenting)). "This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor." *CFRE*, 395 S.C. at 74, 716 S.E.2d at 881 (citation omitted). "It does not mean that we will search for an interpretation in [DOR]'s favor where the plain and unambiguous language leaves no room for construction." *Id.* at 74–75, 716 S.E.2d at 881. "It is only when the literal application of the statute produces an absurd result will we consider a different meaning." *Id.* at 75, 716 S.E.2d at 881 (citation omitted).

*Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 140, 750 S.E.2d 65, 69 (2013) (alterations by court).

In sum, *Alltel Communications*, 399 S.C. at 321, 731 S.E.2d at 873, provides the enforcement of tax statutes should be construed in favor of the taxpayer if the statutes are ambiguous. However, *Centex International*, 406 S.C. at 140, 750 S.E.2d at 69, clarifies statutes regarding tax *credits or exemptions* should construed against the taxpayer if the statutes are ambiguous. Because the specific issue in this case has to do with an exemption, those cases concerning exemptions would control if there were any ambiguity. However, the statutes providing the homestead exemption do not contain any ambiguity, and therefore, there is nothing to construe in any party's favor. Accordingly, the statutes at play here should be interpreted according to their plain meaning because there is no ambiguity. *See Centex Int'l, Inc.*, 406 S.C. at 140, 750 S.E.2d at 69 (" 'This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor.' 'It does not

mean that we will search for an interpretation in [the Department's] favor where the plain and unambiguous language leaves no room for construction.' " (quoting *CFRE*, 395 S.C. at 74-75, 716 S.E.2d at 881)).

## VI. Exemptions for Other Years

■ The Assessor argues the ALC erred in determining Mead's eligibility for the homestead exemption and 4% ratio beyond the 2011 tax year. We agree.

■ "In general, this court may only consider cases where a justiciable controversy exists. 'A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.' " *Sloan v. Greenville Cty.*, 356 S.C. 531, 552, 590 S.E.2d 338, 349 (Ct. App. 2003) (citation omitted) (quoting *Pee Dee Elec. Coop., Inc. v. Carolina Power Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983)).

The ALC should not have decided Mead's status for years after 2011 because the challenge was only to the 2011 year and no evidence was presented regarding the following years. While Mead should continue to receive the homestead exemption if nothing changes, the ALC did not put any conditions on his eligibility. Mead could buy another residence in or out of state and claim that as his primary residence, which could affect Mead's ability to qualify for the homestead exemption on this residence in the future. Although the ALC's order was issued in 2014, the contested case was filed for the 2011 tax year. The issue of the tax years following 2011 are not be ripe for review because we do not know Mead's circumstances changed in subsequent years or if the Assessor has even denied his eligibility for the homestead exemption for those years. Accordingly, we modify the ALC's order to provide Mead's eligibility to the homestead exemption in subsequent years is contingent on no change in his circumstances.

## CONCLUSION

We affirm the ALC's decision that Mead is entitled to the homestead exemption for the 2011 tax year but modify the decision as to the years following 2011.

**AFFIRMED AS MODIFIED.**

HUFF and GEATHERS, JJ., concur.